### JOHN DOYLE *vs.* JOHN DIXON.

An agreement not to engage in a certain kind of business at a particular place for a specified number of years is not within the provision of the statute of frauds, (Gen. Sts. c. 105 § 1, *cl.* 5,) which requires agreements not to be performed within one year from the making thereof to be in writing in order to support an action thereon.

A. and B. made a contract that on a certain day A. should buy and B. would sell B.'s stock of goods, and B. would give and A. should take a lease of B.'s shop, and that if either party should fail to perform his part of the contract he would forfeit and pay to the other a stipulated sum. *Held*, that a subsequent agreement by A. to settle and adjust all matters between himself and B. and to sign the lease ten days before he was bound to do so by the contract was a sufficient consideration for a promise by B. not to do business for five years as a grocer in a certain town.

No exception lies to the exercise of the discretion of the presiding judge who, upon a motion to set aside a verdict for excessive damages, gives to the plaintiff the option to remit so much of the damages as in the judge's opinion is in excess.

B. was a grocer, and leased his shop and sold his stock of goods to A. with whom he agreed not to do business for five years as a grocer in the town. In an action by A. against him for a breach of this agreement the only direct evidence on the question of damages was that of A.'s partner, who testified that, after the breach, the business of the firm was lessened between two hundred and three hundred dollars per month, on which their profit would have been twenty-five per cent., and that of B. himself, who testified that after he resumed business his trade amounted to eleven hundred dollars per month, mostly derived from his old customers. Four hundred dollars damages were awarded to A. for three months' breach of the agreement. *Held*, that no exception lies to the exercise of the discretion of the presiding judge in overruling B.'s motion to set aside the verdict as unwarranted by law upon the evidence, B. at the trial having asked no instruction to the jury on the limit of damages which they would be warranted upon the evidence in finding, and the injury to the plaintiff being such as was not capable of exact proof or definite computation.

CONTRACT for breach of an agreement by the defendant not to go into the grocery business in Chicopee for five years.

At the new trial in the superior court, before *Rockwell, J.,* after the decision reported 12 Allen, 576, it appeared in evidence

Doyle *v.* Dixon.

that the defendant was a grocer at Chicopee, and that on November 19, 1864, he and the plaintiff entered into an agreement and signed a memorandum thereof in writing, by which it was provided that on December 1 ensuing the defendant would transfer to the plaintiff his stock of goods, and would lease to the plaintiff his shop for five years, at an agreed rent, receiving from the plaintiff the market value of the stock, and five hundred dollars besides as bonus, and that if either party should " back out" he should forfeit to the other two hundred dollars.

It appeared also that on November 21 the plaintiff went to the defendant's shop and said that some of his family were sick at North Brookfield and he wanted to go home, and would like to take the lease at once and " settle up the whole business," and the defendant agreed to do so, and proposed that they should go to an attorney's office for the lease to be drawn. One witness testified that, during this conversation, " the defendant said he had some flour coming, and asked if the plaintiff would take it of him ; and the plaintiff said he did not want it, that he had not much capital and it would not be convenient to take it ; and the defendant said, Will you give me the privilege of selling it ? and the plaintiff said, Yes ; and the defendant thanked him for it and said he would not trouble him by going into business in five years." The plaintiff himself testified that the defendant said, " I have a lot of flour coming ; if you don't want to buy it, will you give me the privilege to sell it ? " that he replied, " Yes ; " and that the defendant then said, " If you 'll let me sell the flour it is all I want, and I shall not trouble you in the grocery business in Chicopee in five years."

It appeared further that the parties then went to an attorney's office, and that, while the lease was in preparation, the plaintiff asked if it would not be well to mention in it that the defendant was not to go into the business in Chicopee for five years, and the defendant said it would be foolish, and the attorney said that there was no need of it; that the parties agreed that the lease thus drawn should be deposited with the parish priest; and that a day or two before December 1 the plaintiff paid the bonus of five hundred dollars, and on or before that day all the

other stipulations of the memorandum signed on November **19** were fully performed by the parties respectively.

It was also in evidence that on May 15, 1866, the defendant did enter into the grocery business in Chicopee, and continued in it to the time of the commencement of this action on August 15 following.

The plaintiff claimed his right of action only upon and by virtue of the agreement of November 21; whereupon the defendant requested the judge to rule that he could not recover upon an oral agreement not to go into the grocery business in Chicopee within five years, because such agreement was not to be performed within one year from the making thereof and was within the statute of frauds; but the judge ruled the contrary.

The judge then gave instructions to the jury, to which no exception was taken, instructing them, among other things, at the request of the defendant, "that the plaintiff, in order to recover, must show that the contract on which he claimed was made after the agreement of November 19 was signed, and was based on an independent and new consideration; that under the contract of November 19, as expressed in the written memorandum, the defendant being free to trade according to his pleasure, the alleged permission by the plaintiff to sell flour was no sufficient consideration for the alleged agreement by the defendant not to go into business; that in order to constitute a consideration for the alleged contract the plaintiff must have parted with something of value or have foregone some right which he enjoyed, or the defendant must have acquired or received something of value or some privilege or right which he had not before."

And then, at the plaintiff's request, the judge further in structed the jury that "if the plaintiff agreed with the defendant on November 21 to settle and adjust all matters on that day and waived his right to forfeit the two hundred dollars named in the written contract, that agreement would be a good consideration for the promise not to engage in business for five years;' and, upon the defendant's objecting to this instruction, he in-

structed further that "if there was any act or agreement done or made by the plaintiff on November 21 which was valuable to the defendant, it would support the agreement, if proved, on the part of the defendant to refrain from the business."

On the question of damages the only evidence was that of the defendant, who testified that the business of the shop he opened in May was about eleven hundred dollars per month, mostly derived from customers who had formerly traded with him at the old shop; and that of one McGrath, who testified that he became the plaintiff's partner immediately after the plaintiff's purchase of the stock, and that the amount of trade at their shop was lessened after the defendant opened his shop in May between two hundred dollars and three hundred dollars per month, on which their profit would have been twenty-five per cent.

A verdict for eight hundred dollars' damages was returned for the plaintiff, which the defendant moved to be set aside for excess of damages and as contrary to the weight of evidence. At the hearing on this motion the judge was of opinion that the damages were excessive, but in consequence of the plaintiff's offer to remit four hundred dollars, ordered the verdict to stand for the balance.

The defendant alleged exceptions to this order; to the ruling of the judge upon the plaintiff's request for instructions; and to the ruling in regard to the statute of frauds.

*A. L. Soule,* for the defendant.

*G. M. Stearns,* for the plaintiff.

GRAY, J. It is well settled that an oral agreement which according to the expression and contemplation of the parties may or may not be fully performed within a year is not within that clause of the statute of frauds, which requires any "agreement not to be performed within one year from the making thereof" to be in writing in order to maintain an action. An agreement therefore which will be completely performed according to its terms and intention if either party should die within the year is not within the statute. Thus in *Peters* v. *Westborough,* 19 Pick. 364, it was held that an agreement to support a child until **a**

certain age at which the child would not arrive for several years was not within the statute, because it depended upon the contingency of the child's life, and, if the child should die within one year, would be fully performed. On the other hand, if the agreement cannot be completely performed within a year, the fact that it may be terminated, or further performance excused or rendered impossible, by the death of the promisee or of another person within a year, is not sufficient to take it out of the statute. It was therefore held in *Hill* v. *Hooper*, 1 Gray, 131, that an agreement to employ a boy for five years and to pay his father certain sums at stated periods during that time was within the statute ; for although by the death of the boy the services which were the consideration of the promise would cease, and the promise therefore be determined, it would certainly not be completely performed. So if 'the death of the promisor within the year would merely prevent full performance of the agreement, it is within the statute ; but if his death would leave the agreement completely performed and its purpose fully carried out, it is not. It has accordingly been repeatedly held by this court that an agreement not hereafter to carry on a certain business at a particular place was not within the statute, because, being only a personal engagement to forbear doing certain acts, not stipulating for anything beyond the promisor's life, and imposing no duties upon his legal representatives, it would be fully performed if he died within the year. *Lyon* v. *King*, 11 Met. 411. *Worthy* v. *Jones*, 11 Gray, 168. An agreement not to engage in a certain kind of business at a particular place for a specified number of years is within the same principle ; for whether a man agrees not to do a thing for his life, or never to do it, or only not to do it for a certain number of years, it is in either form an agreement by which he does not promise that anything shall be done after his death, and the performance of which is therefore completed with his life. An agreement to do a thing for a certain time may perhaps bind the promisor's representatives, and at any rate is not performed if he dies within that time. But a mere agreement that he will himself refrain from doing a certain thing is fully performed if he keeps it so

long as he is capable of doing or refraining. The agreement of the defendant not to go into business again at Chicopee for five years was therefore not within the statute of frauds.

The agreement of the plaintiff to settle and adjust all matters between the parties, and to sign the lease, on the 21st of November, ten days before the time when he was bound by the written contract to do so, was a legal consideration for the defendant's agreement. Any act done by the promisee at the request of the promisor, however trifling the loss to himself or the benefit to the promisor, is a sufficient consideration for a promise made without fraud, and with full knowledge of all the circumstances. *Burr* v. *Wilcox*, 13 Allen, 273, and cases cited.

The defendant has no ground of exception to the action of the superior court upon the motion for a new trial. Such a motion, so far as it depends upon the weight of evidence or other matter of fact, is exclusively addressed to the discretion of the presiding judge. When the damages awarded by the jury appear to the judge to be excessive, he may either grant a new trial absolutely, or give the plaintiff the option to remit the excess, or a portion thereof, and order the verdict to stand for the residue. *Lambert* v. *Craig*, 12 Pick. 199. *Hurry* v. *Watson*, 4 T. R. 659 note. *Blunt* v. *Little*, 3 Mason, 107. The judge in this case having adopted the latter course, and ordered the verdict to stand for the sum of four hundred dollars, the only question of law arising thereon is whether the law would warrant a verdict for this amount. The injury to the plaintiff by diverting his trade was not capable of exact proof or definite computation, but depended very much on general estimate, which was peculiarly within the province of the jury. *Marsh* v. *Billings*, 7 Cush. 333. *Earle* v. *Sawyer*, 4 Mason, 14. *Stephens* v. *Felt*, 2 Blatchf. C. C. 37, 39. It is impossible to say that upon the evidence at the trial, and such inferences and estimates as the jury might rightfully make, a verdict for four hundred dollars was not warranted by law. Moreover, any questions of law involved in the motion to set aside the verdict were open to the defendant at the trial, and no nstruction in point of law having been then requested as to the limit of the damages which the jury would be warranted upon

the evidence in finding, no exception lies to the rulings **upon** such questions on the motion for a new trial. *Kidney* v. *Richards*, 10 Allen, 419. *Exceptions overruled.*