JOHN P. SOMERBY & another *vs.* GEORGE BUNTIN.

Suffolk. Nov. 24, 1874. — Sept. 6, 1875. COLT & DEVENS, JJ., absent.

An oral agreement for the sale of an interest in an invention, before letters patent are obtained, is not a contract for the sale of goods, wares or merchandise, within the statute of frauds.

An oral agreement, by which one person is to contribute his inchoate interest in an invention, and the other furnish the money necessary to make that invention available in the form of a patent, and both are to contribute their services to make it remunerative, is an agreement for a partnership, and not a contract for the sale of goods, wares and merchandise, within the statute of frauds; and the patent, when obtained, is in equity partnership property, in whosoever name letters patent are taken out.

A bill in equity by A. against B for the specific performance of an oral agreement made by the parties, by which an invention of B. and all letters patent granted therefor should be their joint property, and that both parties should use their best efforts to make the invention remunerative, alleged that application was made for a patent, the expenses of which were paid by A.; that while the application was

pending the defendant took out letters patent for the same invention, on another application, which he refused to assign to the plaintiff, and under which he made large sales and received large sums of money, for which he refused to account to the plaintiff. *Held*, on demurrer, that it did not appear by the bill that the contract was within the statute of frauds, as one which could not be performed within a year.

This court has jurisdiction in equity, under the Gen. Sts. *c.* 113, § 2, to decree specific performance of an oral contract, which is not within the statute of frauds, where there is no complete and adequate remedy at law.

A bill in equity by A. against B. for the specific performance of an oral agreement made by the parties by which an invention of B. and all letters patent granted therefor should be their joint property, and that both parties should use their best efforts to make the invention remunerative, alleged that application was made for letters patent, the expenses of which were paid by A. ; that various sales of the franchise were made through A. and the money accruing therefrom was divided between the parties according to the agreement ; that while the application was pending, the defendant took out letters patent for the same invention on another application, which he refused to assign to the plaintiff, and under which he made large sales and received large sums of money, for which he refused to account with the plaintiff. *Held*, upon demurrer, that the bill disclosed a case for equitable relief.

In a case in equity heard by a single justice upon bill and demurrer, and by him reserved thereon, an objection to the relief prayed for, not taken in the demurrer nor assigned *ore tenus* at the hearing, is not open to the defendant at the argument before the full court.

BILL IN EQUITY filed January 9, 1872, by John P. Somerby and Jeremiah Prescott, alleging the following facts :

The defendant in the year 1865, and the early part of the year 1866, invented a new and useful improvement in seats for railroad passenger cars, and, being desirous to obtain letters patent therefor from the government of the United States, or otherwise to so use or dispose of his invention as to realize money therefrom, but not having the pecuniary means to pay the expenses of obtaining said letters patent, or otherwise putting his invention favorably upon the market, applied to the plaintiffs for assistance in both of these respects, and offered the plaintiffs each one third part of the property in the invention, and of all moneys and emoluments which should result therefrom, as compensation for affording him the solicited assistance. The plaintiffs believing the said invention to be useful, and that, with the expenditure of the necessary amount of money, and the devotion of time, skill, care and labor, it could be made remunerative, accepted the said offer of the defendant ; and an oral agreement was made between the parties that the invention, by which all letters patent which

should be granted therefor, should be the joint property of the plaintiffs and the defendant, each to be the owner of one third part thereof, and that each and all of the parties should use his best efforts to make said invention available and remunerative for the common benefit of all the parties. In pursuance of this agreement, application was made in the name of Buntin for letters patent of the United States, and the expenses of making and prosecuting the application were paid by Somerby, and sales of the right to use the invention were made principally through the agency of Prescott, from which sales divers sums of money were received, which were divided between Buntin and the plaintiffs in the proportion of one third part to each, in pursuance of the agreement. The invention was rapidly advancing in public favor, chiefly through the labor, expenditures and exertions of the plaintiffs, and the sales of rights to use the same were increasing in a similar ratio, so that the proceeds of the sales had become large and were steadily augmenting, and would have yielded to the plaintiffs a large income for their time, labor and expenditures in the premises, but that the defendant early in the year 1867, while the aforesaid application to the United States for letters patent was pending, and without the knowledge or consent of the plaintiffs, or either of them, made application to the United States for letters patent in his name, and in another form, for the said invention, on which application letters patent were granted to him, on or about April 2, 1867, for a "design for end frame of a car seat," which was the invention of the defendant that had become the property of the defendant and the plaintiffs. Upon the receipt of the said letters patent by the defendant, he refused to assign any part thereof to the plaintiffs, and denied that they had any right therein or in the invention, or in the proceeds thereof, and proceeded to make large sales of rights to use the invention under the letters patent, and has received therefrom divers large sums of money for which he refuses to render any account to the plaintiffs, or to make any division thereof with them, and pretends that all said sums of money belong to him, and that the plaintiffs, or either of them, have no property or right therein.

The prayer of the bill was that the defendant might be restrained from making any sale or assignment of the said let-

ters patent, or of the invention, to any person or persons other than the plaintiffs without their consent; that he be compelled to assign and transfer to each of the plaintiffs one third part of said letters patent and invention; for an account of all sums of money and of all other considerations received by him for sales under said letters patent or for licenses to use the invention; and the payment to each of the plaintiffs of such sums of money and other considerations as should be found to be due to them respectively; and for general relief.

The defendant demurred to the bill upon the grounds which appear in the opinion. The case was heard by *Gray*, C. J., upon the bill and demurrer, and reserved, at the request of the parties, for the consideration and determination of the full court.

*T. L. Livermore*, for the defendant. 1. The contract is within the statute of frauds. It is for the sale of goods or merchandise. *Tisdale* v. *Harris*, 20 Pick. 9. An invention is property, and as capable of being sold as is a chose in action, a sale of which is within the statute. *Baldwin* v. *Williams*, 3 Met. 365. Letters patent may be sold before they are granted. *Herbert* v. *Adams*, 4 Mason, 15. *Nesmith* v. *Calvert*, 1 Wood. & M. 34. *Gay* v. *Cornell*, 1 Blatchf. C. C. 506. *Rathbone* v. *Orr*, 5 McLean, 131. *Rich* v. *Lippincott*, 2 Fish. Pat. Ca. 1. *Gayler* v. *Wilder*, 10 How. 477.

The contract set up must be construed as providing that the parties should use their best efforts in making the invention "available and remunerative," and should share the profits during the existence of "all letters patent which should be granted therefor," which would be at least seventeen years, (U. S. St, 1861, c. 88, § 16,) or else no time is prescribed for its continuance. In the first case, being a contract not to be performed within one year, it is within the statute; *Packet Co.* v. *Sickles,* 5 Wall. 580; *Hill* v. *Hooper*, 1 Gray, 131; *Doyle* v. *Dixon*, 97 Mass. 208; and being inseparable, will not sustain a decree for a conveyance or an account. *Irvine* v. *Stone*, 6 Cush. 508. *McMullen* v. *Riley*, 6 Gray, 500. In the second case, the contract for a division of profits is void for uncertainty, and there is no time fixed for which an account may be decreed; for the mere joint ownership of a patent gives no right to the owners to participate in profits. *Boston & Maine Railroad* v. *Babcock*, 3

Cush. 228, 232. *Vose* v. *Singer*, 4 Allen, 226. Curtis on Pat. (3d ed.) §§ 186–191, and cases cited.

2. The retention in Gen. Sts. *c.* 113, § 2, of the clause conferring power to enforce specific performance of written contracts, limits the jurisdiction of this court to that class of contracts. In the construction of a statute every word should have effect. *Opinion of Justices*, 22 Pick. 571, 573. *Commonwealth* v. *Intoxicating Liquors*, 105 Mass. 178, 179. The maxim *expressio unius est exclusio alterius,* " never more applicable than when applied to the interpretation of a statute," (Broom's Leg. Max. 5th ed. 585, 664,) affords the only interpretation of this statute which at the same time gives every word effect and makes it consistent with the course of legislation on the subject. The general jurisdiction clause was enacted in 1857. St. 1857, *c.* 214. In 1859 it was enacted that specific performance of written contracts for the sale of land might be enforced against guardians of the contractors subsequently appointed, and the same was reënacted with the similar provision as to executors and administrators (St. of 1855, *c.* 374, § 1) in the Gen. Sts. *c.* 117, §§ 5, 6, where concurrent jurisdiction is given to this court and the probate courts. The Legislature either intended to give a remedy against guardians in this court, coextensive with the jurisdiction as to specific perform ance given to it by the St. of 1857 and the Gen. Sts. *c.* 113, § 2 , or else it left contracts entered into by persons, who were afterwards put under guardianship, to be enforced under the general jurisdiction clause in the difficult and dilatory method before pursued in courts of equity, according to the " practice and usage" of which all oral contracts for the sale of land will be enforced in case of fraud, ( *Glass* v. *Hulbert*, 102 Mass. 24, 32,) even against one who becomes insane after entering into it by a decree for possession and performance. *Pegge* v. *Skynner*, 1 Cox Ch. 23. *Owen* v. *Davies*, 1 Ves. Sen. 82. *Hall* v. *Warren*, 9 Ves. 605.

3. The plaintiffs allege that the defendant offered them " each one third part of the property in the invention and of all moneys and emoluments which should result therefrom as compensation for affording him the solicited assistance," and that it was agreed " that each and all of the parties should use his best efforts to make said invention available and remunerative for the common

benefit of all the parties," but do not allege that they so used "their best efforts" — which is a fatal defect. *Ely* v. *McKay*, 12 Allen, 323, 329.

The plaintiffs do not offer to do equity. There is no allegation that they have made no sales or realized no profits since the defendant refused to share his profits with them. They do not offer to account, neither do they offer to use their best efforts for the common benefit nor divide profits in the future, and they ask to share all the defendant's profits and to restrain him from conveying his share of the patent.

If there are not mutual accounts to adjust, this court has no jurisdiction to compel an account; because an action for money had and received, or on the alleged agreement, would be a plain, adequate and complete remedy at law, and it would not be according to the usage and practice of courts of equity to grant this relief. *Pool* v. *Lloyd*, 5 Met. 525. *Mitchell* v. *Green*, 10 Met. 101. Gen. Sts. *c.* 113, § 2. Dan. Ch. Pract. (4th Am. ed.) 551, and n. 3.

The bill prays that the defendant " may be restrained from making any sale or assignment of the said letters patent or of the invention to any person or persons other than the plaintiffs without their consent," whereby the defendant would be prevented from disposing of the one third of the patent and invention which they concede to him, at any time. This prayer cannot be supported by the contract, unless it is construed to be that the parties shall hold the patent for their common benefit during its life, in which case the statute of frauds and want of offer to do equity are insuperable obstacles.

The plaintiffs' laches is a bar to the bill. *Plymouth* v. *Russell Mills*, 7 Allen, 438. *Badger* v. *Boardman*, 16 Gray, 559. *Boston & Maine Railroad* v. *Bartlett*, 10 Gray, 384. *Tash* v. *Adams*, 10 Cush. 252. *Fuller* v. *Melrose*, 1 Allen, 166. *Peabody* v. *Flint*, 6 Allen, 52. The laches of a plaintiff would seem especially to be an obstacle to enforcing specific performance of an oral contract, which courts of equity have been reluctant to do, and few cases of which are reported. Batten on Spec. Perf. 256-9. 1 Spence Eq. Jur. 645, 646. *Normanby* v. *Devonshire*, Freem. Ch. 216. Story Eq. Jur. § 753.

*J. P. Healy*, for the plaintiffs.

GRAY, C. J.  The causes assigned in the demurrer are, 1st, that the contract sought to be enforced is not in writing; 2d, that it is against the course and practice, and not within the jurisdiction of this court, to entertain suits for the specific performance of oral contracts; 3d, that the plaintiffs have not stated such a case as entitles them to any discovery or relief in equity.

1. In support of the first cause assigned, the defendant relies on the section of the statute of frauds relating to the sale of goods, wares or merchandise; Gen. Sts. *c.* 105, § 5; and also on the clause of the same statute relating to agreements not to be performed within one year from the making thereof. § 1, *cl.* 5.

It was held by the Court of Chancery in England, before the American Revolution, that shares in a corporation were goods, wares and merchandise within the statute of frauds. *Mussel* v. *Cooke,* Pre. Ch. 533. *Crull* v. *Dodson,* Sel. Cas. in Ch. 41. And it has been held by this court that such shares, and even promissory notes, fall within the statute. *Tisdale* v. *Harris,* 20 Pick. 9. *Baldwin* v. *Williams,* 3 Met. 365. But the modern decisions in England are the other way, and the decisions in other states are at variance. Browne on St. Frauds, §§ 296, 298. 1 Chit. Con. (11th Am. ed.) 541 *note.* The words of the statute have never yet been extended by any court beyond securities which are subjects of common sale and barter, and which have a visible and palpable form. To include in them an incorporeal right or franchise, granted by the government, securing to the inventor and his assigns the exclusive right to make, use and vend the article patented; or a share in that right, which has no separate or distinct existence at law until created by the instrument of assignment; would be unreasonably to extend the meaning and effect of words which have already been carried quite far enough. See *Chanter* v. *Dickinson,* 6 Scott N. R. 182; *S. C.* 5 Man. & Gr. 253.

But it is not necessary in this case to go so far as to say that a sale of letters patent for an invention is not within the statute of frauds. Before letters patent are obtained, the invention exists only in right, and neither that right, nor any evidence of it, has any outward form which is capable of being transferred or delivered *in specie,* or which, upon any construction, however liberal,

can be considered as goods, wares or merchandise. So far as re-garded the letters patent when obtained, the contract between the parties in this case was not a contract of sale, but a contract of partnership, which would be equally valid whether written or oral. Story Part. § 86. 1 Lindley on Part. (3d ed.) 89. According to the contract alleged, the defendant was to contribute to the proposed partnership his inchoate right in the invention; the plaintiffs were to contribute the money necessary to make that invention available in the form of a patent; and both were to contribute their services to make it remunerative. The patent, when obtained, was therefore not the result of the efforts, the service or the money of one partner, but of the joint contribution of all, and was in equity partnership property; in whosever name letters patent were taken out. 3 Kent Com. (12th ed.) 24–26. *Green* v. *Beesley*, 2 Scott, 164; *S. C.* 2 Bing. N. C. 108. *Sims* v. *Willing*, 8 S. & R. 103. *Musier* v. *Trumpbour*, 5 Wend. 274. *Duryea* v. *Whitcomb*, 31 Vt. 395. *Dyer* v. *Clark*, 5 Met 562. *Fall River Whaling Co.* v. *Borden*, 10 Cush. 458. *Bul finch* v. *Winchenbach*, 3 Allen, 161.

We are therefore of opinion that the contract set up in the bill was not an agreement for the sale of goods, wares or merchandise, within the statute of frauds.

The agreement to obtain letters patent might be performed within a year, and it does not appear by this bill that all the efforts required of either party, to make the invention available and remunerative for the common benefit, might not also be exerted within that time. As it does not appear that the contract could not be performed within a year, it does not fall within the statute of frauds. *Blake* v. *Cole*, 22 Pick. 97. *Doyle* v. *Dixon*, 97 Mass. 208. Browne on St. Frauds, §§ 272–282. It may be doubted whether the case of *Packet Co.* v. *Sickles*, 5 Wall. 580, cited by the defendant, in which an oral contract to pay, for a right to use an invention on a certain steamboat, so much a year during the term of a patent having twelve years yet to run, "if the said boat should last so long," was held to be within the statute, can be reconciled with the general current of authority in this Commonwealth and elsewhere; but it is quite unlike this case, in which it does not appear that the parties contemplated that the time for the performance of their contract should exceed a year.

2. It is now well·settled that the jurisdiction of courts of equity to decree specific performance is not confined to contracts for the sale of land, but may be exercised, upon sufficient cause shown, over agreements for the transfer of interests in personal property or patent rights. 1 Story Eq. Jur. *c.* 18. *Clark* v. *Flint,* 22 Pick. 231, 239. *Leach* v. *Fobes,* 11 Gray, 506, 510. *Todd* v. *Taft,* 7 Allen, 371. *Binney* v. *Annan,* 107 Mass. 94. *Corbin* v. *Tracy,* 34 Conn. 325. Even oral contracts will be specifically enforced, when the case is not within the statute of frauds, and no complete and adequate remedy can be had by an action at law. *Colt* v. *Nettervill,* 2 P. Wms. 304. *Clifford* v. *Turrell,* 1 Yo. & Col. Ch. 138. *Duncuft* v. *Albrecht,* 12 Sim. 189. *Union Ins. Co.* v. *Commercial Ins. Co.* 2 Curtis, 524 ; *S. C.* 19 How. 318. *Glass* v. *Hulbert,* 102 Mass. 24, 33.

Under the Revised Statutes, indeed, the equity jurisdiction of this court to decree specific performance was confined to written contracts. Rev. Sts. *c.* 74, § 8 ; *c.* 81, § 8. But by the St. of 1857, *c.* 214, the Legislature conferred upon this court " full equity jurisdiction, according to the usage and practice of courts of chancery, in all cases where there is not a full, adequate and complete remedy at law." The reënactment of this statute in the Gen. Sts. *c.* 113, § 2, is not to be limited in effect by reason of its being accompanied by a reënactment of the more restricted provisions of the Revised Statutes and of the successive statutes by which our equity jurisdiction had been from time to time extended.

3. The oral agreement of the parties, alleged in the bill, that the invention and all letters patent which should be granted therefor should be their joint property, in proportions specified, stands upon the same ground as if it had been in writing. Such an agreement, though made before the issue of a patent, is valid, and capable of being enforced in equity by compelling an assignment, an account and such other relief as the circumstances of the case may require. *Herbert* v. *Adams,* 4 Mason, 15. *Nesmith* v. *Calvert,* 1 Woodb. & Min. 34. *Clum* v. *Brewer,* 2 Curtis, 506. *Binney* v. *Annan,* 107 Mass. 94. Although a court of equity will not ordinarily decree specific performance of an agreement to form a partnership, which may be immediately dissolved by either party, it will secure to a partner the interests in property to which by the partnership agreement he is entitled.

*Buxton* v. *Lister*, 3 Atk. 383. Story Part. § 189. 1 Story Eq. Jur. § 666.

The bill sufficiently alleges that the plaintiffs performed the agreement on their part, and that the profits received before the issue of the patent were duly divided between the parties. It is not alleged, and is not to be presumed, that the plaintiffs have received any profits, for which they are bound to account, since the defendant procured the patent to be issued in his own name alone.

For these reasons, none of the causes of demurrer assigned afford any ground for refusing to entertain jurisdiction of the bill. The objection of laches was not taken in the demurrer filed, nor assigned *ore tenus* at the hearing before a single justice. It is therefore not open to the defendant.        *Demurrer overruled.*