Wright, J.
The first error considered is that assigned upon overruling the demurrer to the second defense. That defense was this:
“ Second. That the pretended contract in said petition alleged, is not an agreement to be performed within the space of one year from the making thereof, and is not in writing, and no note or memorandum of said pretended agreement was made in writing, and signed by the defendant, or other person by his authority.”
The question thus raised is, must a contract such as that described in the petition, be in writing ? Defendant maintains the affirmative upon two grounds. First. That the patent law requires that such a contract must be in writing, by section 11, law of 1836, which is as follows:
“ Every patent shall be assignable in law, either, as to the whole interest or any undivided part thereof, by any instrument in writing; which assignment, and also every grant and conveyance of the exclusive right under any patent to make and use, .and to grant to others to make and use the thing patented within and throughout any specified part or portion of the Hnited States, shall be recorded in the patent office, within three months from the execution thereof.” Curtis on Patents, 684; 8 Statutes at Large, 117 ; 1 Brightíey’s Statutes, 730.
We think the interest described in this section is •such an interest as transfers the title to such patent, or title to a part thereof. It is not an interest in resulting proceeds, *355 such, as does not involve a right and power to sell and transfer the patent itself, in whole or in part. Eor instance, in the contract before us, even if in writing, Blakeney could not sell any territory, as it is called in patent language. That is, he could not sell to parties the right to use this patent in a given state or territory, and give any paper that would convey title to that patent in such state or territory. He could not sell a right to a party to use any machine. His interest was not in the title to the patent, but an interest in proceeds that might result there'from. The necessity of section 11 is at once apparent. A man who wants' to buy an interest in the title, so as, for instance, to give him the absolute ownership of the right in and for the State of Maine, or of California, desires to know if he of whom he buys has the right to sell. Eor that purpose, he goes to Washington, and examines the records of the patent office. If those records show title in A B, he knows it is safe to deal with A B.
If one desires to buy real estate, he goes to the records and finds title in A. Now, suppose B had a verbal contract to receive from A one-half the rents and profits of that real estate, that is certainly an interest distinct from title, and certainly might be enforced if the statute of frauds were out of the way.
In the case before us, only such contracts must be in writing.as affect the title to the patent; other contracts, which affect equitable interests, may be by pafol.
We do not understand that Blakeney claims any such right as that of assignee. He does not claim that he can sell states, territories, or rights. All this belongs to Leffel; but wrhen rights have been sold an interest is claimed in the money produced.
In Jordan v. Dobson, 4 Fisher, 232, Strong, J., holds that “An interest in the net proceeds of collections, under a patent, does not necessarily amount to legal ownership of the patent itself.” The difference between ownership in the patent and a mere right to proceeds is recognized in Clum v. Brewer, 2 Curtis, 523.
*356 Curtis, sec. 179, says: “It is obvious that this statute” (eleventh section of act 1836) “ undertakes to deal with the legal estate vested, or to be vested, in the patentee by the grant of the patent, and with that alone. It makes the interest so vested ‘ assignable at law; ’ or, in other words, it recognizes the exclusive right vested in the patentee as a legal estate, and capable of being conveyed to another by a wiitten instrument, which shall vest in that other a complete title either to the whole of that exclusive right or to some part of it in some specified portion of the United States. Mere licenses, therefore, or contracts confirming the limited and not the exclusive right to exercise some of the privileges secured by the patent, are not the subjects of regulation by this statute. It relates solely to grants or conveyances of the exclusive right or legal estate vested in the patentee, which leave no interest in the patentee for the particular territory and the particular right to which they relate.”
By this it will be seen that Mr. Curtis’ idea is, that the “legal estate,”'and “that alone,” is that, the transfer of which is required to be in writing. As counsel for defendants say, this “ legal estate ” is an “ interest in the legal title.” In other words,, that interest or estate, to the transfer of which a writing is necessary, must be such as enables the party receiving it to convey legal title. Certainly no contract for an interest in mere proceeds, even if in writing, would enable a party to sell the patent right or any part of it. An interest in half the proceeds of sales throughout Ohio would not enable the party to convey an undivided interest in the half of the patent right for the State of Ohio. The contract under, consideration states that plaintiff, Blakeney, “ became equitably entitled to one-half of the beneficial interest in said patent right.” Does this mean one-half of the legal title? Is an equitable interest a legal title ? This is a contract for a “ beneficial interest ” in a thing, not for the thing itself. One may have a beneficial interest in a vast number of things without any right of property or legal title — as a right of way without own *357 ersliip of soil. Again, the alleged contract proceeds to say that defendant took the patent as a trustee of one-half, and holds the same in trust for plaintiff. We generally speak of holding a legal title in trust; but if the contract really intended to convey one-half that legal title, by what process can the party so intending to convey be said to be holding in trust what he has already parted with?
The interest of plaintiff is further described thus: “In consideration thereof the defendant agreed to hold the right and title to be acquired upon and by the issue of said patent, in trust for the joint and equal benefit of the plaintiff and himself, who were in equity to be tenants in common of the said patent right.”
The defendant is to hold the “ title ” to the patent; holding which he has the power to dispose of .states, territories, and every right which belongs to the legal owner, but he still represents a trust. That trust regards an equitable right belonging to plaintiff in the nature of tenancy in common. This tenancy is not of the legal right, but “ in equity.” It is therefore clear to us that the interest conveyed by this parol contract was not a legal, but an equitable one. It did not attempt to convey any portion of the legal title, but simply an interest in pecuniary results, and is therefore not required to be in writing.
We think the position taken by counsel for plaintiff is sound. The same section that provides that an assignment shall be in writing, also provides that such writing must be recorded. What therefore must be written, must also be recorded. Upon the contrary, Clifford, J., in Baldwin v. Sibley, 1 Clifford, C. C., 155, says : “ Licenses are not required to be recorded, and consequently need not be written.”
What need not be recorded, need not be written. Now as to assignments it is provided that they are to be in writing and to be recorded. It would therefore seem that a contract, which would be valid without record, must be valid without writing. It is undoubted, that assignments, although not recorded, are not void in all cases. They may *358 be good between parties, though not as to third persons (Brooks v. Bryan, 23 Vesey, 542,) who are innocent purchasers. The law of record is for tbe benefit of third persons, and does not vary the rights of parties between themselves. Nobody could contend that a deed was not valid, as between the parties, for want of record. So in the patent law. If a party fail to record his assignment, the original owner might resell the same right to another. If that purchaser were bona fide and without notice, lie would prevail as against the party who had neglected to put his'assignment upon record at Washington. See Curtis, secs. 181, 182. The same reasoning, by analogy, applies to such contracts as are required to be in writing. This requirement is for the benefit of third persons, possible purchasers. If, therefore, it was as defendant claims, and this was such a contract as section 11 describes, it might be difficult, as between the parties, to set up the defense that because the agreement was in parol, it could not therefore be enforced.
It will be seen that the section quoted provides that the patent or interest therein shall be “ assignable” in writing, meaning, that that which is required to be in writing must amount to an “ assignment.” ' Such is the construction adopted by defendant’s counsel, and is doubtless correct.
Curtis, sec. 180, says: “In order to operate as an as-’ sigument, it must, to the full extent of the territory to which it relates, convey absolutely to the grantee the exclusive interest vested in the patent with wffiicb it undertakes to deal.”
The characteristics here described, can not be found in the contract before us. An assignment relates to territory. Curtis, sec. 193. It may coyer certain localities, as a state or states. If it is of an aliquot, portion of the patent itself, it relates to all that territory over which the patent extends. “In order to constitute an assignment, there must be a grant which vests in the grautee the exclusive right to the whole patent, or some undivided part of it, or *359 to the whole or an undivided part of some territorial interest.” Curtis, sec. 193.
“ The subject-matter of a patent is not partible except in respect to territorial assignments.” Sugden v. Day, 2 Blatch. 20. There is nothing about territory in this contract, and it does not purport to convey any aliquot portion of the patent right. Upon the contrary, it says that the patentee still holds it, and all of it, but holds one-half in trust. -And again, that he holds the right and title, that is the whole of it, for the joint benefit of the two. It is contradictory to say that he continues to hold what he has already conveyed.
Again, in Curtis, sec. 185 : “ The true characteristic of an assignment under our law is, that it is an instrument, which vests in the grantee an indefeasible title to the whole or some part of the entire interest of the patentee.”
It must be obvious that under this contract of Blakeney’s he could not convey any indefeasible title to one-half the patent.
In the case of Gayler v. Wilder, 10 How. 477, an assignment had been made and recorded before the patent issued, and the question was, whether the right passed to such an assignee. Chief Justice Taney said:
“ The first question arises upon the assignment of Eitzgerald to Euos Wilder. The assignment was made and recorded in the patent office before, the patent issued. It afterwards issued to Eitzgerald. And the plaintiffs in error insist that the assignment did not convey to Wilder the legal right to the monopoly subsequently conferred by the patent, and that 'the plaintiff", who claims under him, can not therefore maintain this action.
“ The inventor of a new and useful improvement certainly has no exclusive right to it until he obtains a patent. This right is created by the patent, and' no suit can be maintained by the inventor against any one for using it before the patent is issued. But the discoverer of a new and useful improvement is vested by law with an inchoate right to its exclusive use, which he may perfect and make *360 absolute by proceeding in the manner which the law requires. Fitzgerald possessed this inchoate right at the time of the assignment. The discovery had been made, and the specifications prepared to obtain a patent. And it appears by the language of the assignment that it was intended to operate upon the perfect legal title which Fitzgerald then had a lawful right to obtain, as well as upon the imperfect and inchoate interest which he actually possessed.”
There was no question in this case as to a parol contract; the matter in dispute was, what did a certain written assignment accomplish, and did it convey apatent subsequently issuing? The court holding what is undoubted law, that an interest in the patent, or, as we understand it, a portion of the patent right, must be in writing. But we find nothing to show that there may not be interests of an equitable nature flowing from the patent, that may be transferred without writing. Certainly such a question was not before the court.
Indeed the foregoing extract shows that a purchaser may have an equitable right, -which he may perfect by proper proceedings.
In Littlefield v. Perry, 21 Wall, 221, Waite, C. J., says: “An assignment of an imperfect invention, with all improvements upon it that the inventor may make, is equivalent in equity to an assignment of the perfected results. The assignment in this case being such a one, the assignees became in equity the owners of the patent granted in the perfected invention. . . . Littlefield took the legal title in trust for them,.and should convey. Courts of equity in proper cases consider that as done which should be. If there exists an obligation to convey at once, such courts will oftentimes proceed as if it had actually been made.”
From this it appears that there are equitable, as well as legal rights in patents.
In the view, therefore, that we take of the case, this contract did not attempt to convey a portion of the patent right. It did not attempt to convey any legal title; it was at most but an interest of an equitable nature, entitling *361 Blakeney to a share of what might be realized, and giving him a right to call for an account of the same.
This interest of Blakeney’s does not arise, as counsel for Leffel contend, from the fact that Blakeney is half owner of the thing that produces the results, for the contract all through recognizes Leffel as such owner; holding for the purpose of dividing the proceeds that may be made.
A case very like the one before us is that of Somerby v. Buntin, 118 Mass. 279; indeed the facts there seem to be almost identical with the contract alleged here.
A portion of the syllabus is in these words: “ An oral agreement for the sale of an interest in an invention, before letters-patent are obtained, is not a contract for the sale of goods, wares, or merchandise, within the statute of frauds.”
Another part of the same syllabus is in these words: “ An oral agreement, by which one person is to contribute his inchoate interest in an invention, and the other to furnish the money necessary to make that invention available in the form of a patent, and both are to contribute their services to make it remunerative, is an agreement for a partnership, and not a contract for the sale of goods, wares, and merchandise, within the statute of frauds; and the patent, when obtained, is in equity partnership property, in whosever name letters-patent are taken out.”
The statement shows that defendant had invented an improvement for seats in railroad cars. He had not the means to get out a patent, or put his invention upon the market, and therefore applied to plaintiffs for assistance, offering them each one-third part of the property in the invention, and of all moneys aud emoluments arising therefrom. Plaintiffs accepted the offer, and an oral agreement was made, that the invention should be the joint property of plaintiffs and defendant, each to be the owner of one-third part thereof, and each and all the parties should use their best efforts to make the invention remunerative for the common benefit. In pursuance of the agreement, ap *362 plication was made in the name of defendant for letters-patent; the expenses were paid by plaintiffs. There were divers sales made, the proceeds of which were divided between plaintiffs and defendant, in the proportions specified in the agreement. It is quite remarkable that counsel in this case did not claim that the oral contract was void, under the patent law, but only under the statute of frauds.
Counsel for defendant urge another proposition. They say, conceding all that plaintiff claims, this contract only gives him an undivided half of something, but he can enforce nothing under it. They say that the agreement, even if in writing and signed by the parties, is worthless as a basis to recover a share of the profits. To this they cite the words of Judge Curtis from Clum v. Brewer (2 Curtis, 506), where he says: “One tenant in common has as good right to use and license third persons to use the thing patented as the other tenant in common has. Neither can come into a court of equity and assert a superior equity, unless it has been created by some contract modifying the rights which belong to them as tenants in common.”
In that case Smith and Morse were joint owners, or tenants in common of the patents, and Smith had sold rights under which defendants claimed. Of course Smith had the right to make such sales, and Morse could claim no superior rights as would prevent Smith’s action, unless upon a special contract to that effect, which did not exist.
But we can not see how this can prevent Blakeney from asking what he does. He says that Leffel holds in trust for him, and asks an account. In asking for half the proceeds he does not ask a superior equity, but only an equal one. Defendant urges that this action can not be maintained, because within the statute of frauds, not being to be performed within one year, and not being in writing.
The first citation made by defendant is, 3 Parsons’ Contracts, 35. The text reads thus : “ Much the most important rule in reference to this section we have had occasion to allude to already. It may be stated thus. If the executory promise be capable of entire performance within *363 one year, it is not within this clause of the statute. The decision of this question does not seem to depend entirely upon the understanding or intention of the parties. They may contemplate as probable a much longer continuance of the- contract or a suspension of it and revival after a longer period; it may in itself be liable to such continuance and revival; and it may in this way be protracted so far that it is not in fact performed within a year; but if, when made, it was in reality capable of a full and bona fide performance within the year, without the intervention of extraordinary circumstances, then it is-to be considered as not within the statute.”
This we understand to be the correct rule of law. In a note to the above Parsons says: “ The cases which have arisen upon this clause of the statute may be conveniently arranged into three classes. 1. Where, by the express agreement of the parties, the performance of the contract is not to be completed within one year. 2. Where it is evident, from the subject-matter of the contract, that the parties had in contemplation a longer period than one year as the time for its performance. 3. Where the time for the performance of the contract is made to depend upon some contingency, which may or may not happen within one year. Oases falling'within the first class are clearly within the statute.”
As one of the first class, Parsons cites Harris v. Porter, 2 Harrington, 27, which is also cited by defendants. In that case there was a verbal contract to carry the mails from 1832 to 1835. Plaintiff endeavored to claim that the contract -was not within the statute, because it was within the power of the postmaster to put an end to it at any time. The court say: “ This was a contract which could not possibly be performed within one year; by its terms it was to continue four years. Though it might be annulled or put an end to by the postmaster general within the year, still it falls within the act as an agreement, which, according to its terms, is not to be performed within the year.”
There is no number of years fixed upon in the contract before us. Herrin v. Butters, 20 Maine, 119, was a case *364 clearly within the statute. The syllabus is, “ "Where, by the terms of a contract, the timé of its performance was to be extended beyond a year, it is within the statute of frauds, though a part of it was to be performed within the year.”
“ To bring a casé within the statute of frauds, it must have been expressly stipulated by the parties, or it must, upon a reasonable construction of their contract-, appear to have been understood by them, that the contract was not to be performed within a year.”
The contract in this case was for seeding ground, for three successive springs, and the case might well have been disposed of on the ground that performance in one year was simply impossible.
In the case of Packet Co. v. Sickles, 5 Wall. 580, the contract was to use a certain invention in a boat, during the continuance of the patent, if the boat should last so long, the patent having twelve years to run. The contract was held to be within the statute. C. J. Gray, in Somerby v. Buntin, 118 Mass. 286, doubts if this case can be reconciled with the general current of authority.
Notwithstanding these cases and others cited, we think Parsons states the proper rule. “ If the executory promise be capable of entire performance within one year, it is not within the statute.” A full collection of authorities in the note G to 3 Parsons, 36.
“As it does not appear that the contract could not be performed within a year, it does not fall within the statute of frauds.” Somesby v. Buntin, supra.
Brown says the statute applies to agreements, which, fairly and reasonably interpreted, do not admit of a valid execution within that time. Brown on Erauds, sec. 273. If an agreement may be performed entirely within the year, consistently with the understanding and rights of the parties, it is not within the statute, sec. 274.
It is not necessary to put a strained construction upon language and say, that if there is a physical possibility of performance within the year, the case is out of the statute. But if the manifest intent of the parties is, that perform *365 anee may or might take place in a year, and if such performance would be an execution of the contract according to the understanding of the parties, then writing is not necessary.
It must be conceded that the authorities are not entirely uniform, as may be seen in chap. 13 of Brown, sec. 272 et seq.; Blake v. Cole, 22 Rick. 97; Boyle v. Bixon, 97 Mass. 208.
In this case it is very clear that the contract was capable of performance within a year, and there might have been such a performance, which would have been entirely in accordance with the understanding of the parties.
If Leffel had sold out his entire interest in the patent within the first year, it would have been such a performance, and the contract therefore is not within the statute.
The 'question of jurisdiction must be abandoned by defendants’ counsel, and properly so. This suit does not “ involve the validity of the patent.” That validity is conceded. Indeed, it is the basis of Blakeney’s ground for relief, for in asking a share of the proceeds he affirms the validity of the patent which produced them. Darst v. Brockway, 11 Ohio, 462; Sherman v. Champlain Transportation Company, 31 Vt. 162.

The judgment of the district court is reversed.