JOHN W. CURRIER *vs.* ALBERT HALLOWELL.

Suffolk.    January 11, 1893. — March 2, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Contract — Patent — Action.*

In October, 1883, B. made the following written agreement: "Received of A." a certain sum "in full payment for all filters and water-cocks made to date, it being understood A. shall own one undivided half of any patent and improvements that may be made on said filters; also" a certain sum "for which I am to assign one undivided half of loom-check patent, which is already allowed." To this was added an oral agreement that, if A. would furnish the money necessary for improving and perfecting the filters and water-cocks mentioned and for manufacturing them for sale, B. would do the work necessary to perfect and develop the invention for the benefit of A. and B. jointly, do the business of manufacturing and selling the filters and water-cocks, and would pay A. one half of the net proceeds of the sale. Under this agreement, in 1883 and 1884, A. laid out several hundred dollars "for perfecting hydraulic filtering faucet, and for manufacturing filters and water-cocks." In the summer of 1884, B. got a patent on the water-cock and filter combined in one patent. Later in the same year, B. sold the patent and all the water-cocks he then had for several thousand dollars, and fraudulently concealed the fact until within six years of the date of an action by A. against B. to recover A.'s share of that sum. *Held*, that an action for a share of the proceeds could be maintained.

HOLMES, J. This is an action to recover a share of the proceeds of certain patents and patented articles. The defences are a general denial and the statute of limitations. The case was tried before a judge, without a jury, and comes before us on exceptions to the refusal of the court to rule that the plaintiff could not maintain his action, and also that the relation between the parties was a partnership, and that the plaintiff could only recover a share in the profits after deducting all expenses and charges.

At the trial an auditor's report was put in, and although there was other evidence the court found that it did not control the

auditor's report; therefore, so far as necessary to sustain the rulings, we have assumed that the judge disbelieved the additional evidence. The material facts are as follows. On October 23, 1883, the defendant made the following written agreement: "Lowell, Mass., October 23, 1883. Received of J. W. Currier two hundred and twenty-eight dollars and eighty-four cents, in full payment for all filters and water-cocks made to date, it being understood J. W. Currier shall own one undivided half of any patent and improvements that may be made on said filters; also eighty-two dollars, for which I am to assign one undivided half of loom-check patent, which is already allowed." To this was added an oral agreement that, if the plaintiff would furnish the money necessary for improving and perfecting the filters and water-cocks mentioned and for manufacturing them for sale, the defendant would do the work necessary to perfect and develop the invention for the benefit of the plaintiff and defendant jointly, do the business of manufacturing and selling the filters and water-cocks, and would pay the plaintiff one half of the net proceeds of the sale. Under this agreement, in 1883 and 1884, the plaintiff laid out between six and seven hundred dollars " for perfecting hydraulic filtering faucet, and for manufacturing filters and water-cocks." In the summer of 1884 the defendant got a patent on the water-cock and filter combined in one patent. Later in the same year, the defendant sold the patent and all the water-cocks he then had for five thousand dollars, and fraudulently concealed the fact until within six years of the date of this action, which is brought for the plaintiff's share in that sum.

It is objected that the patent was not for the filter alone, and that the agreement did not extend to a patent for a filter and water-cock combined. But the facts reported warrant the inference that the invention spoken of included a combination of filter and water-cock, and were it otherwise it would be hard to see how the defendant could benefit by a confusion introduced by himself, it being clear that the filter at least was within the scope of the contract. See *Ryder* v. *Hathaway*, 21 Pick. 298, 305, 306; *Lupton* v. *White*, 15 Ves. 432, 442.

As the agreement applied to the patent, the effect of the dealings was to give the plaintiff at least an equitable interest

in the invention. It is found that, at the date of the agreement, the invention was so far perfected as to be capable of assignment; but were this otherwise, as the agreement gave the marks by which the invention and patent contemplated could be ascertained when they came into being, it would have operated upon them at that time. See *Gayler* v. *Wilder*, 10 How. 477; *Railroad Co.* v. *Trimble*, 10 Wall. 367; *Smith* v. *Edwards*, 156 Mass. 221, 222.

The plaintiff, being entitled to one half of the patent, was entitled to one half of the money received by the defendant as its proceeds, and it is quite immaterial whether the plaintiff's right was equitable or legal. The quasi equitable right to treat such money as received to the plaintiff's use is as strong in the one case as in the other. An action lies by one co-owner against the other in circumstances like the present, and even if there was a partnership (*Somerby* v. *Buntin*, 118 Mass. 279) the venture was ended, and nothing remained but to divide the money; it has been settled in this State for a long time that an action at law is a proper remedy when there are only two partners. *Jones* v. *Harraden*, 9 Mass. 540, n. *Bond* v. *Hays*, 12 Mass. 34, 36. *Stiles* v. *Campbell*, 11 Mass. 321. *Shepard* v. *Richards*, 2 Gray, 424, 426, 427. *Blood* v. *Blood*, 110 Mass. 545, 547.

The sale of the patent was wholly outside of and contrary to the agreement of the parties. That of the cocks, on the other hand, was contemplated, and the defendant was only to pay over one half the net proceeds of the sale. Therefore, as to the latter, if it had appeared that they furnished an appreciable part of the consideration for the money received by the defendant, and that the defendant had been at expense in producing them, a case can be imagined in which it would have been proper to deduct such expenses in whole or in part. But the auditor's report discloses no outlay by the defendant, and although the defendant testified to payments which may have included among their undiscriminated items some on account of the filters, there was other testimony that the plaintiff made all the payments, and it is probable that he made more than half. We must assume that the judge's view of the material facts was not affected by the defendant's testimony. It is not necessary to say more to an-

swer the suggestions which may be drawn from *Somerby* v. *Buntin*, 118 Mass. 279, 286, that the patent was part of the supposed partnership assets, a question on which we express no opinion.

The defence of the statute of limitations was not argued to us. It was disposed of by the finding that the defendant fraudulently concealed the cause of action up to 1889. Pub. Sts. c. 197, § 14. All but one thousand dollars was received within six years. *Miller* v. *Miller*, 7 Pick. 133.

*Exceptions overruled.*

*E. M. Johnson*, ( *W. N. Osgood* with him), for the defendant.
*J. C. Burke*, for the plaintiff.