### BEACON OIL COMPANY *vs.* WALTER J. PERELIS.

Middlesex.   January 23, 1928. — April 4, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & SANDERSON, JJ.

*Equity Jurisdiction,* Specific performance, To assign a patent.   *Contract,* Construction, To assign patent, Performance and breach.   *Frauds, Statute of.   Patent.   Attorney at Law.   Evidence,* Competency, Privileged communications.

A contract to assign a patent may be enforced specifically in a suit in equity in the Superior Court.

An agreement by an inventor with a corporation by which he was employed that the corporation would defray expenses in connection with an application for a patent to be issued as to a certain invention, and that the patent application should be assigned by the inventor to a new corporation, one half of the capital stock of which should be issued to the employer corporation and one half to the inventor, is not so uncertain as to prevent its specific performance in a suit in equity by the employer corporation against the inventor to compel the assignment of the application to a new Massachusetts corporation formed by the employer corporation in return for one half of the new corporation's capital stock, although the contract included no further details than those stated above with respect to the formation, administration, or financing of the new corporation or the policy to be pursued in exploiting the invention.

Neither the statute of frauds nor the addition thereto in the sales act, G. L. c. 106, § 6 (1), prevented the specific enforcement by a suit in equity of the contract above described, although it was made orally.

At the hearing of a suit for specific performance of the contract above described, it appeared that patent attorneys were employed by the corporation to apply for and to procure the issuance of the patent, their services were paid for by the corporation, and they were acting for both the corporation and the inventor. *Held*, that communications by the inventor to such attorneys were not inadmissible as privileged communications by a client to his attorney.

All the evidence at the hearing of the suit above described was taken by a stenographer appointed under G. L. c. 214, § 24, Equity Rule 29 (1926) and it was *held*, that

(1) A finding by the trial judge upon conflicting evidence, that the patent, assignment of which was sought, was for a process or invention contemplated by and embraced in the contract between the parties, was not clearly wrong;

(2) A finding was warranted that a further invention, for which a second patent was granted, and relating to a further improvement of the principle involved in the first patent, was not included in the contract.

BILL IN EQUITY, filed in the Superior Court on March 30, 1926, and afterwards amended, seeking that the defendant "be ordered forthwith to execute and deliver to Everett Oil Process Company assignments of . . . applications for patent Serial No. 16,952, filed March 20, 1925 and Serial No. 39,280, filed June 24, 1925, the inventions described therein and all patents to be granted therefor on receipt by him of one half of the authorized capital stock of said Everett Oil Process Company."

The suit was heard by *Weed*, J., a stenographer having been appointed under G. L. c. 214, § 24, Equity Rule 29 (1926) to take the evidence.

Among facts found by the judge were the following: "Other than the provision that the patent applications were to be assigned to a corporation to be formed, in the capital stock of which the parties were to share equally, no further details with respect to the formation of said corporation and its administration and financing and the policy to be pursued in exploiting the inventions were stipulated in the agreement of July 1924, and as hereinbefore related all efforts of the parties thereafter to agree upon such details proved futile."

Other material facts found by the judge are stated in the opinion. The judge ordered a final decree described in the opinion and reported the suit to this court for determination.

*T. Hunt,* (*W. Gates, Jr.,* with him,) for the plaintiff.

*S. C. Rand,* (*R. Proctor & W. F. Porter* with him,) for the defendant.

CARROLL, J.   The defendant was the general manager of the plaintiff, an oil refining corporation.   In 1922 it began the use of the "cracking" process in producing gasoline.   To prevent the formation of a carbon deposit, the defendant made use of a coil of pipes through which the material passed before reaching the vaporizer, in order to extract the excessive heat from the material.   In and about the plant this improvement was commonly called the "after cooler."   The defendant also conceived the idea of increasing the production of gasoline by an increase in the "cracking" temperature. To accomplish this he added another coil of pipes to the process then in use and by the application of a "cracking" temperature to this additional coil the "cracking" process was prolonged and the amount of gasoline increased.   This was spoken of as the "time coil."   Before July, 1924, both of these improvements were in practical use at the plaintiff's refinery.   Although they were conceived by the defendant, in their development Wollenberg, the plaintiff's president, and Walsh, its assistant manager, collaborated and by study and suggestion contributed to their utilization.   The expense of the preliminary work and the installation of these improvements were sustained entirely by the plaintiff.   It was found by the judge that Wollenberg on behalf of the plaintiff orally agreed with the defendant that the defendant should be acknowledged as the inventor of the "after cooler" and "time coil" and the plaintiff would defray the expenses of applications for patents, these patent applications to be assigned to a new corporation, one half of the capital stock of which was to be issued to the plaintiff and one half to the defendant.                                        •

On or about July 22, 1924, the defendant sent to Wollenberg descriptions of the "time coil" and "after cooler."   On or about this date patent attorneys were employed at the plaintiff's expense to file and prosecute applications for the inventions.   Their fees for service were paid by the plaintiff, and from this time until the present suit was begun

the defendant was in constant communication with the patent attorneys, "suggesting, drafting, revising and discussing descriptions of the inventions, and their purpose and mode of application." On March 18, 1925, patent application No. 16,952 was filed; later another application, No. 39,280 was filed. In January, 1926, seven claims of application No. 16,952 as amended were allowed. No further action on either application was had prior to the filing of the bill in this suit. The defendant revoked the power of attorney of the patent attorneys on file at the patent office.

In February, 1926, the Everett Oil Process Company was organized by the plaintiff under the laws of the Commonwealth, with a capital of one thousand shares without par value. In March, 1927, the secretaries of the new corporation and of the plaintiff tendered to the defendant a certificate for five hundred shares of the capital stock of the new corporation and requested in return an assignment to the new corporation of the inventions and patent applications numbered 16,952 and 39,280 and all improvements therein. Formal drafts of such assignment were offered to the defendant for his signature. The defendant refused to accept the certificate of stock and to execute the assignment.

The trial judge ordered that a decree be entered that, upon delivery to the defendant of five hundred shares of the capital stock of the Everett Oil Process Company, the defendant was to execute and deliver to the plaintiff an assignment of patent application No. 16,952. The case was reported to this court.

There was evidence to support the finding of the judge that the defendant orally agreed with the plaintiff, acting by its president Wollenberg, to assign the patent applications for the "after cooler" and the "time coil" to a corporation to be formed, one half of the capital stock of which was to be issued to the plaintiff and one half to the defendant. In addition to the testimony of Wollenberg that such an agreement was made, there was testimony from the patent attorneys to the same effect. Some of the defendant's letters tended to show that the agreement was made. The evidence was conflicting but an examination of all the re-

ported evidence satisfies us that the judge was justified in finding the agreement as relied on by the plaintiff was made.

The defendant contends that the contract cannot be enforced specifically; that the contract, even if one existed, was not sufficiently definite; that the details of the corporation to be formed and the State in which it was to be organized were not sufficiently defined. It is settled law in this Commonwealth that a contract to assign a patent will be specifically enforced in equity. *Somerby* v. *Buntin*, 118 Mass. 279, 287. *Marshall Engine Co.* v. *New Marshall Engine Co.* 199 Mass. 546. There was no uncertainty as to the corporation to be formed or the other details of the contract such as to prevent its specific enforcement. It was sufficiently definite. The contract was made in this Commonwealth. The organization of a corporation under the laws of the Commonwealth was a reasonable compliance with the oral agreement. The absence of a specific statement as to some of the details of the organization of the new corporation did not deprive the court of its jurisdiction to enforce the agreement. The amount of the capitalization, the provisions of the by-laws and other matters of detail, which were not agreed on, were not important provided the corporation was formed in substantial accord with the agreement. "The various questions as to what corporation should be utilized, or, if a new one were organized, what, and how, it should be organized, not having been agreed upon, must be determined by what is reasonable under all the circumstances." *Niles* v. *Graham*, 181 Mass. 41, 47.

The contract to assign the patent was not invalid under the statute of frauds or the addition thereto in the sales act. G. L. c. 106, § 6 (1). The right to the invention was not goods, wares or merchandise or a chose in action. It was said by Gray, C.J., in *Somerby* v. *Buntin, supra,* at page 285, in discussing the question whether a patent was goods, wares or merchandise, "The words of the statute have never yet been extended by any court beyond securities which are subjects of common sale and barter, and which have a visible and palpable form. To include in them an incorporeal right or franchise, granted by the government,

securing to the inventor and his assigns the exclusive right to make, use and vend the article patented; or a share in that right, which has no separate or distinct existence at law until created by the instrument of assignment; would be unreasonably to extend the meaning and effect of words which have already been carried quite far enough. . . . Before letters patent are obtained, the invention exists only in right, and neither that right, nor any evidence of it, has any outward form which is capable of being transferred or delivered *in specie.*" Neither the defendant's right in the invention nor his application for a patent was a chose in action. His right to the invention could not be considered as "a right not reduced into possession." See *Haskell* v. *Blair*, 3 Cush. 534–536. The defendant was not possessed of a right to recover damages in an action at law for a breach of contract or for a tort. He had no claim against any one which had not been reduced to possession. *Somerby* v. *Buntin*, *supra*, page 286. See *Meehan* v. *Sharp*, 151 Mass. 564; *Berwin* v. *Bolles*, 183 Mass. 340, 342.

Certain communications made by the defendant to the patent attorneys, which the defendant contends were privileged, were admitted. There was no error in admitting this evidence. The patent attorneys were employed and their services paid for by the plaintiff; they were acting for both the parties, and communications made to them by the defendant were not privileged against the plaintiff. *Thompson* v. *Cashman*, 181 Mass. 36. *Vrusho* v. *Vrusho*, 258 Mass. 185.

The defendant contends that the plaintiff is not entitled to an assignment of patent No. 16,952 because it embraced a new principle, called the "waiting coil," not in use in the plaintiff's refinery when the oral contract was made and not included in the agreement between the plaintiff and the defendant. The argument of the defendant is that the process in existence when the contract was made was a two-step process so far as the cracking operation was concerned, these steps being heating of the oil to a cracking temperature and holding it in a second heater at that temperature; that the process covered by the application No. 16,952 is a three-step process in the cracking operation, involving the heating

of the oil to a high cracking temperature in the initial heater, permitting the recession of that temperature in a second heater, and raising the temperature of the material in a third heater to a point higher than the temperature reached in the initial heater.

It was a disputed question whether the additional process included in the patent No. 16,952 was within the scope of the contract by which the defendant was to assign his invention to the new corporation. The evidence warranted the judge in finding, as he did, that the three steps in the process as patented were contemplated by and embraced in the contract. Without attempting to repeat all the evidence or the inferences to be drawn therefrom, it is enough to refer to the defendant's description of the process contained in the two applications for patents, and to the defendant's admissions to the patent attorneys when the question of the assignment of this identical patent was under discussion.

The plaintiff contends that the contract between the plaintiff and the defendant included the process described in application for letters patent serial No. 39,280. The judge found that this application covered a subject matter not in existence in July, 1924. It was, he found, spoken of as a "reboiler cracking" and was conceived by the defendant and reduced to practice at some time subsequent to July, 1924. In its essential features it embodies the further treatment of the unconverted residue of the oil after the first cracking operation, for the purpose of obtaining additional gasoline. We cannot say that the judge was clearly wrong. On the conflicting evidence before him he could make the finding, and in our opinion his conclusion should not be set aside.

There was no error in the conduct of the trial. A decree is to be entered for the plaintiff, directing that upon the issue and delivery to the defendant of a certificate of five hundred shares of the capital stock of the Everett Oil Process Company, this being one half of the authorized capital stock, within thirty days from the date of the decree, the defendant is to execute and deliver to this corporation an assignment of said patent application No. 16,592 and of the invention therein described; with costs.

*Ordered accordingly.*