### EDWARD S. NILES *vs.* JOHN H. GRAHAM.

Suffolk.    January 17, 1902. — March 1, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Equity Jurisdiction*, To compel new execution of mutilated instrument.    *Contract*, Construction.

In a suit in equity to compel the defendant to execute anew an assignment to the plaintiff which the defendant wrongfully had mutilated, it appeared, that by an agreement in writing the defendant gave the plaintiff an equal interest in a certain patent and in return the plaintiff agreed to furnish capital as needed. It was agreed, that the patent should be assigned to the plaintiff to be held by him in trust and assigned by him "to a corporation now organized or to be organized whenever the parties may deem it advisable for the purpose of carrying on the business," and that the capital stock of the corporation to which the patent should be assigned should be divided in equal shares between the plaintiff and the defendant, but that the amount to be contributed by each to be sold for working capital should be fixed by the plaintiff. No other details were agreed upon by the parties. It further appeared, that in accordance with the agreement the defendant executed and delivered to the plaintiff an assignment of the patent, and thereafter wrongfully obtained possession of it and mutilated it by tearing off the signature and seal, thereby preventing the plaintiff from having the assignment recorded at the patent office, and thereafter refused to recognize his agreement as binding. *Held,* that the plaintiff was entitled to relief; that the provision that the plaintiff should assign the patent to a corporation "whenever the parties may deem it advisable for the purpose of carrying on the business" did not give the defendant the right to terminate the whole arrangement at any time he saw fit; that, when the defendant had transferred the patent to the plaintiff, the plaintiff was under an obligation to furnish within a reasonable time the

capital needed and the defendant under a corresponding obligation to give him a reasonable time to do so; that the defendant, wrongfully having mutilated the assignment, should execute it anew, and, upon his doing so, the plaintiff either must assign the patent to an existing corporation reasonably fitted for the purpose, or must organize such a corporation as was reasonably proper and furnish such capital as was reasonably necessary, the plaintiff and defendant having equal shares in the capital stock of the corporation whether existing or to be formed.

Since St. 1877, c. 178, this court has had full equity jurisdiction.

BILL IN EQUITY, filed January 19, 1901, to compel the defendant to execute anew and deliver to the plaintiff an assignment dated June 5, 1900, by the defendant to the plaintiff of certain letters patent issued by the United States to the defendant for an improvement in brake mechanism for railway cars.

The case was heard by *Loring*, J., who, being of opinion that the question of the plaintiff's remedy ought to be determined by the full court before further proceedings were had, ordered a stay of proceedings, and reported the case for the consideration of the full court.

The report contained the following findings of fact :

The agreement in writing hereafter printed was executed and delivered on June 5, 1900, and on the same day the assignment in question was made and delivered to the plaintiff in pursuance of the agreement.

The plaintiff rendered services and advanced money in pursuance of the agreement, and both parties deemed it advisable that the letters patent should be held by the plaintiff in trust under the agreement until certain clouds on the title of the letters patent should be removed, and a second assignment was executed and delivered to the plaintiff on August 9, 1900.

While the plaintiff was proceeding in good faith under the agreement, and was seeking to have the clouds removed, the defendant, on August 27, 1900, in the absence of and without notice to the plaintiff, wrongfully possessed himself of the written assignments of June 5 and August 9, and mutilated the assignments by tearing therefrom the signatures and seals, and thereafter refused to recognize the agreement as binding, stating to the plaintiff that he was "done."

By reason of the fact that the plaintiff and defendant deemed it advisable that no steps should be taken until the clouds mentioned above had been removed, the defendant, by his

wrongful mutilation of the assignments, deprived the plaintiff of time and opportunity to carry out the agreement of June 5, and thus by his acts prevented further performance of the agreement by the plaintiff.

The justice found that, by the making and delivery of the assignment of June 5, 1900, the title to the letters patent vested in the plaintiff as trustee, but the plaintiff's title was rendered imperfect by the wrongful acts of the defendant in preventing record of the assignment, and by the mutilation, whereby recording became impossible.

The defendant introduced testimony to show that rights of third parties had so intervened as to prevent a decree to restore the rights of the plaintiff, or for specific performance of the contract, but the justice did not find that there were any intervening rights.

On these findings, the plaintiff contended that he was entitled to a decree for a new execution of the assignment of June 5, 1900, and submitted a decree, but the justice ruled, that the agreement was too indefinite to admit of specific performance, and further ruled, that if specific performance of the whole agreement could not be decreed a decree should not be made for a new execution of the assignment, and refused to enter the decree. The defendant contended, that he was at liberty to end all arrangements between himself and the plaintiff, and that when he mutilated the assignments on August 27, he was exercising a right to which he was entitled under the agreement. The justice was of opinion that this construction of the agreement was not correct, and that the case should be sent to a master to assess the damages suffered by the plaintiff.

The agreement was as follows :

" This Agreement made this fifth day of June A. D. 1900, by and between John H. Graham of Boston in the County of Suffolk and Commonwealth of Massachusetts, Party of the first part, and Edward S. Niles of said Boston, party of the second part, Witnesseth:

" That whereas the party of the first part is the inventor and owner of certain letters patent, as follows, to wit: Letters Patent of the United States for a new and useful improvement in brake mechanism for railway cars numbered 610676 ; and

whereas the party of the first part desires to promote and develop the business of manufacturing and vending and licensing others to manufacture and vend appliances for railway cars under said letters patent, and to introduce said invention to general use with a view to profit to be derived therefrom, and whereas it is desired that the party of the second part shall furnish capital to carry on said enterprise, shall interest capitalists therein, and through his personal influence enlist those who will aid in carrying on said business and share its burdens and promote its welfare.

"Now, therefore, in consideration of the mutual promises herein contained said parties do hereby agree as follows, to wit:

"The party of the first part agrees to assign forthwith the letters patent hereinbefore recited to the party of the second part to be held by him in trust during such time as to the parties hereto it may seem advisable, and to be assigned by said trustee, the party of the second part, to a corporation now organized or to be organized whenever the parties may deem it advisable for the purpose of carrying on the business aforesaid.

"The party of the first part agrees to assign any other useful improvement in brake mechanism for railway cars of any sort, or devices of any kind pertaining thereto which he may invent or may acquire by gift or otherwise, and any letters patent which may be obtained therefor, to the party of the second part upon like trusts and for the purposes aforesaid. And if such letters patent or improvement are acquired as aforesaid after a corporation shall have been organized and said business shall have been merged therein, or after the aforesaid patent has been transferred to a corporation already organized, then the party of the first part agrees to assign said other letters patent, improvements or inventions to said corporation at the request of the party of the second part.

"The party of the second part agrees to furnish capital as needed and to use his best efforts to push said business and to extend the same for the best interests of all.

"It is further agreed that from the first profits derived from the prosecution of the business the party of the second part shall be remunerated for his entire outlay, whatever it may be,

but if he shall so elect the funds which may be received from royalties or otherwise may be used in increasing the business and his outlay still remain a debt to be paid in the future, and the fact that he allows it so to remain shall not be deemed a waiver of his rights to remuneration as aforesaid and shall in no way impair his claim therefor.

"It is agreed that the capital stock in any corporation already formed or to be formed, for the purpose of carrying on the business aforesaid, in which said business may be merged, shall be divided and apportioned among the parties hereto in equal shares and that said parties shall contribute of said stock to the treasury of said corporation for sale for working capital, in equal shares, so much as the party of the second part shall deem necessary for said purpose.

"It is further agreed that neither party to this agreement nor his representatives, shall sell, assign or transfer any interest under this agreement, or stock in the said corporation or corporations, without first offering the same to the other party on the same terms _bona fide_ as could be obtained elsewhere.

"It is further agreed and understood by the parties hereto that should any disagreement arise between the party of the first part and the party of the second part as to any matter herein contained or as to anything pertaining to the business hereinbefore referred to before the merging of the business in a corporation as aforesaid, then, and in such case, the party of the first part shall choose one referee and the party of the second part shall choose another referee and those two shall choose a third referee, all said referees to be wholly disinterested, and to them, the said referees shall be referred for their decision any matters of disagreement or difference as aforesaid and said decision of said referees or a majority ·of them shall be final provided that no reference of matters in dispute as aforesaid shall be made or allowed until all sums of money and advancements made or expended by the party of the second part up to the time of such reference shall have been fully repaid to him, the party of the second part, unless such prior payment shall have been at the time of such proposed reference expressly waived in writing by the party of the second part.

"It is further agreed that if, by reason of death or disability,

the party of the second part shall be unable to furnish capital as required to carry on the enterprise, said letters patent shall be transferred to the party of the first part upon tendering of any and all sums and advancements made or expended by the party of the second part in capital stock at market value or cash up to the time of such disability *provided* that if before such disability occurs said letters patent, pursuant to the foregoing agreement, have been conveyed to any corporation, then, in lieu of a re-assignment of said letters patent, the party of the second part or his representatives shall surrender the capital stock of such corporation, delivered to the party of the second part in pursuance of this agreement, upon tender of money or stock advanced as aforesaid, except such portion of said stock as may be justly retained by the party of the second part or his representatives in view of the amount of time and service which may have been contributed to said business by the party of the second part prior to said disability. In Witness Whereof the parties have hereunto set their hands and seals the day and year above written. John H. Graham [Seal]. E. S. Niles [Seal]. Witness, R. E. Somerville."

*W. O. Kyle*, for the plaintiff.

*F. W. Kittredge & R. A. Jordan*, for the defendant.

LORING, J. We are of opinion that the plaintiff is entitled to a re-execution of the assignment of the letters patent.

By the true construction of the contract the defendant gave to the plaintiff an equal interest in the patent in question and in any future improvements made by him on the invention covered by it; and in payment for that half interest the plaintiff agreed " to furnish capital as needed." At that stage of the adventure it was not possible to go into details, and the parties agreed that the patent should be assigned to the plaintiff " to be held by him in trust" and " to be assigned " by him " to a corporation now organized or to be organized whenever the parties may deem it advisable for the purpose of carrying on the business aforesaid." It is provided that the capital stock of the corporation, to which the patent is assigned, shall be divided in equal shares between the plaintiff and the defendant, but that the amount, to be contributed by each to be sold for working capital, shall be fixed by the plaintiff. No

other details were agreed upon by the parties. It was not specified who was to decide the question, whether an existing corporation should be availed of or a new one organized, and in case a new one were organized, who was to decide the many questions, which necessarily will arise in that connection. Neither was it specified how long a time should be allowed for this purpose, or for the plaintiff to furnish the capital.

The defendant argues, from this failure to deal with these details in the agreement, and from the clause, that the letters patent were to be held by the plaintiff " in trust during such time as to the parties hereto it may seem advisable," and from the further clause, that the letters patent were to be assigned by the plaintiff to a corporation " whenever the parties may deem it advisable for the purpose of carrying on the business aforesaid," that the defendant had the right to terminate the whole arrangement at any time he thought fit.

But we do not think, that that is the true construction of the contract. Taking the contract as a whole we think that the plaintiff came under an absolute obligation to furnish the capital needed and the defendant came under a corresponding obligation to afford him time to do so. The contract contemplates that the invention is to be exploited by a corporation and that a corporation will be formed, that the capital will be furnished by the plaintiff and that the letters patent will be assigned by the plaintiff to that corporation.

When the defendant had transferred the letters patent to the plaintiff, the plaintiff was bound to furnish the capital within a reasonable time, and the defendant was bound to give him a reasonable time within which to do so. The various questions as to what corporation should be utilized, or, if a new one were organized, what, and how, it should be organized, not having been agreed upon, must be determined by what is reasonable under all the circumstances. As the plaintiff is to furnish the capital and is to decide upon the amount, which is to be contributed by each to be sold for working capital, we think that he should take the initiative in the matter of utilizing an existing corporation or organizing a new one, and that any reasonable course adopted by him must be accepted by the defendant.

The defendant, having wrongfully mutilated the assignment

to the plaintiff, should re-execute the same; upon his doing so, if the plaintiff does not within a reasonable time do one of these two things, namely, either assign the patent to an existing corporation which is reasonably fitted for the purpose, or organize such a corporation as is reasonably proper and furnish such capital as is reasonably necessary, he will commit a breach of his contract for which the defendant may have his action of damages. Whether an existing corporation or a new corporation is used, the plaintiff and defendant are to have an equal share in the capital stock.

We think that the ruling made at the hearing was wrong, that since the whole contract could not be specifically enforced by the court the defendant would not be compelled to re-execute the assignment. The amended bill in this suit in its final form, is not a bill seeking specific performance, but a bill to compel the defendant to restore to the plaintiff evidence of the assignment to him in order that among other things it may be recorded in the patent office. The mutilation of the assignment did not revest the title in the defendant, but it prevented the plaintiff from perfecting the title which as between the parties had already vested. The re-execution of lost instruments is a separate and ancient head of equity jurisdiction. *Bennett* v. *Ingoldsby*, Finch, 262. *Simmons Creek Coal Co.* v. *Doran*, 142 U. S. 417. *Lawrence* v. *Lawrence*, 42 N. H. 109, 112. *Lancy* v. *Randlett*, 80 Maine, 169. *Kent* v. *Church of St. Michael*, 136 N. Y. 10. The case of an instrument which has been wrongfully mutilated comes within that rule. Since St. 1877, c. 178, (Pub. Sts. c. 151, § 4; R. L. c. 159, § 1,) this court has had full jurisdiction in equity. *Billings* v. *Mann*, 156 Mass. 203. *Hurd* v. *Turner*, 156 Mass. 205, n. *Emerson* v. *Atkinson*, 159 Mass. 356, 361. *Nathan* v. *Nathan*, 166 Mass. 294. *Weeks* v. *Currier*, 172 Mass. 53. *New England Ins. Co.* v. *Phillips*, 141 Mass. 535, 545. *Old Colony Railroad* v. *Rockland & Abington Street Railway*, 161 Mass. 416, 417.

*Decree accordingly.*