John J. Lawless *vs.* Vincent Melone & another.

Suffolk.    February 8, 1966. — March 11, 1966.

Present: Wilkins, C.J., Whittemore, Cutter, Spiegel, & Reardon, JJ.

*Joint Enterprise. Equity Jurisdiction,* Specific performance. *Damages,* Joint enterprise agreement. *Value. Equity Pleading and Practice,* Rehearing.

On conflicting evidence in a suit in equity, a conclusion by the trial judge that there was a joint venture between the plaintiff and the defendant in the establishment of a wool scouring plant was justified by testimony of the plaintiff concerning his negotiations and arrangements with the defendant, correspondence, and the extent of the plaintiff's services. [442–443]

In a suit in equity, the trial judge correctly concluded that specific performance of an agreement between the plaintiff and the defendant for one half ownership by each of the capital stock of a small corporation formed to operate a wool scouring plant established by them as a joint venture should not be ordered in view of facts showing that such ownership arrangement would be unsatisfactory and probably unworkable. [443]

A determination by the trial judge in a suit in equity of "the value of the assets" of a small closely held corporation as of the time of the establishment of a wool scouring plant which it had been formed to operate was without proper evidential basis where the determined value omitted consideration of the corporation's heavy indebtedness, of its lack of a record of earnings, and of its speculative future, and was based, as to land and buildings of the plant, on an appraisal thereof at more than twice their actual cost made for the purpose of obtaining a loan from the Small Business Administration before the plant was in operation, and, as to its principal machine, a used ten year old scouring train, on an appraisal thereof at more than twice its actual installed cost. [444–446]

Where it appeared in a suit in equity that the parties, in an agreement for a joint venture in a wool scouring plant to be operated by a corporation to be formed, had provided for equal ownership of the corporation by them and that the defendant in breach of the agreement had failed to transfer to the plaintiff one half of the stock of the corporation, the plaintiff's damages were the value of a one-half noncontrolling interest in the stock. [446]

Where the trial judge in a suit in equity rightly found that the plaintiff was entitled to damages from the defendant for breach of an agreement for a joint venture in a wool scouring plant, but erroneously appraised the plaintiff's damages and entered a final decree ordering the defendant to pay the erroneous amount, and the evidence reported was largely but not wholly documentary, it seemed to this court that the plaintiff's damages might depend upon further oral testimony which might be adduced, as well as that already in the record, and the final decree was reversed, the findings of the trial judge upon the issue of damages set aside, and the suit remanded to the Superior Court for further proceedings upon that issue only. [446–447]

BILL IN EQUITY filed in the Superior Court on December 20, 1962.

The suit was heard by *Dewing, J.*

*Arthur Brogna* for the defendants.

*Jerome Preston, Jr.* (*David L. Weltman* with him) for the plaintiff.

CUTTER, J. Lawless sought specific performance of an alleged agreement (1) that he and Melone, as joint venturers, would cause the other defendant, San Angelo Wool

Processing Company (Processing), a Texas corporation, to be formed; (2) that Lawless and Melone would each own one half of Processing's capital stock; (3) that Lawless would contribute his services in setting up a wool scouring plant in San Angelo, Texas; (4) that Melone would perform certain services; and (5) that various other joint activities would take place. In the alternative Lawless seeks damages for the fair value of services allegedly performed by him.

Processing, by stipulation, submitted to the jurisdiction of the Superior Court. A judge of that court, after receiving extensive oral testimony and written evidence, made findings. He concluded in effect (1) "that there was a joint undertaking" of which there had been a breach; (2) that, in the circumstances, specific performance would not be fair; and (3) that Lawless had suffered $61,500 damages by reason of the breach and that $61,500 was the fair value (on the basis of a claim in quantum meruit) of the services performed for the defendants by Lawless. A final decree required that Melone and Processing "jointly and severally" pay to Lawless this sum with interest from July 1, 1962. The defendants appealed. The evidence is reported.

1. The evidence concerning whether there was a joint venture was conflicting and confusing. The evidence showed prolonged exploration, in which Lawless participated, by Melone and others concerning the possibility of establishing a wool scouring plant in a sheep growing area of Texas. It was obviously the expectation that this plant would prove to be profitable because it would reduce transportation costs and would be used conveniently by persons in the community. Lawless performed substantial services. These included preparing studies of the operation; several trips to Texas; searches for a suitable second-hand scouring train; discussing financing with the Small Business Administration (SBA) and with San Angelo Industries, Inc. (Industries), a local development corporation; watching the dismantling and reassembly of a used wool scouring

train; and various other matters. Lawless's testimony, concerning his negotiations and arrangements with Melone, some of the correspondence, and the extent of Lawless's services, in the aggregate, justified the judge's conclusion that there was a joint venture.[1] That conclusion necessarily rested largely on oral testimony concerning which questions of credibility were presented. We cannot say that the conclusion that a joint venture existed, reached by the judge, who had opportunity to hear and observe the witnesses, was erroneous.

2. It was undisputed that Melone had neither paid any compensation to Lawless nor issued shares of Processing's capital stock to him. If in fact there was an agreement for a joint venture, Melone had clearly failed to perform that agreement.

3. We think that the trial judge correctly concluded that specific performance should not now be ordered of the joint undertaking which he had found to exist. There was evidence, and the judge found, that after the new plant had been established in July, 1962, Melone had expanded wool trading activities at Processing's San Angelo plant and that there had been a severe cut in the scouring operation. Lawless and Melone had been engaged in litigation with each other and to have each of them own one half of the capital stock in a small corporation would be likely to result in an unsatisfactory and probably unworkable arrangement. Further issues of stock in 1964 to Melone have complicated the situation. Consideration of alternative relief thus was appropriate.

4. Lawless asserts that breach of the joint undertaking occurred in July, 1962, when Lawless unsuccessfully re-

[1] The judge found that in November, 1961, Melone and Lawless first "spelled out their arrangements." Then "each agreed to be initially responsible for $10,000 [of investment] and later to share equally in an additional $34,200 [investment] together with their respective personal services. They were to share profits and losses and share control of the enterprise that was to be established." He also found that a financial purchase agreement (which the evidence shows was worked out in November, 1961, and later revised to some extent) required Industries to lend $171,000 to the enterprise, and that SBA was to participate in this loan to the extent of $136,800, leaving $34,200 to be furnished by Industries.

quested Melone to give him Processing stock. The judge was warranted in finding that the joint enterprise of establishing the plant had been "accomplished by the summer of 1962" and that "Melone then sought an escape" from transferring stock to Lawless.

The judge then proceeded to determine "the value of the assets of . . . Processing . . . in July, 1962." He found (1) that this value was $164,000; (2) that Melone had contributed $34,000 to Processing's capital, plus organizational expenses of $9,000; (3) that Lawless was obligated to pay half of these contributions, less Lawless's unreimbursed expenses of $1,000; and (4) that from any interest to which Lawless is entitled, there must be deducted $20,500. The judge awarded Lawless $82,000 (one half of $164,000) less $20,500, or a net amount of $61,500.[2]

Under the finding (fn. 1) of a joint venture, Lawless was to receive a one-half interest in Processing, presumably to be represented by one half its capital stock (the normal method of sharing control of a corporation). The value of such a stock interest, of course, would reflect the effect of Processing's heavy indebtedness as well as the value of its assets. Lawless replied "Yes" when he was asked (a) whether the transaction with Melone was "a joint venture" and (b) if it were true that he (Lawless) "never expected and would not accept one cent for . . . [his] time and efforts by way of fee."[3] The theory thus advanced was

---

[2] The judge seems to have made no finding concerning a note to a San Angelo bank of $13,680, which Melone had to indorse personally in connection with the Processing financing. Certainly, the judge gave this indorsement no effect as a capital contribution to Processing.

[3] This testimony of Lawless seems a definite assertion of claim to the value of the stock interest found to have been promised to him rather than to recovery on any theory of restitution of the fair value received by the defendants from his efforts. Cf. *Air Technology Corp.* v. *General Elec. Co.* 347 Mass. 613, 628–629, not referred to by Lawless in his brief. It may be that, at the hearings now to take place, Lawless will be able to show the *Air Technology* case to be in some measure applicable to his situation. The finding of the trial judge concerning the fair value of Lawless's services is irrelevant to a determination of the 1962 fair market value of one half of Processing's capital stock, except as the share value may be affected by the circumstance that the physical assets were collected in the corporation's plant in San Angelo, rather than distributed elsewhere, in July, 1962. So far as appears, this value can now be fairly ascertained. We note that the judge's finding concerning the value of Lawless's services implied a much higher rate of compensation than Lawless had been receiving for work done by him in earlier periods since World War II.

that the measure of damages was the fair market value in July, 1962, of one half the capital stock of Processing, giving due weight to all elements then existing, speculative or otherwise, affecting such value. This value the trial judge seems to have determined on the basis of what he regarded as Processing's asset value.

We are not convinced that there was proper evidential basis for finding that in July, 1962, Processing's assets were worth a net amount of $164,000, in view of its outstanding indebtedness, or that one half the capital stock of Processing had a fair market value of $82,000. The principal bases of the finding concerning the value of the assets appear to be two so called "appraisals."

The first of these was an appraisal at $154,000, of the land and buildings in which Processing's plant was later placed, made at the request of SBA, apparently intended to be "at . . . [Processing's] real worth as a going concern." This appraisal seems to have been designed to facilitate obtaining an SBA loan. The actual cost of the real estate and buildings was only $70,000.

The second so called "appraisal" was testimony of Melone, under cross-examination. Melone testified in effect that $195,000 would be the then current cost (installed in San Angelo) of a new wool scouring train substantially similar, except for age and depreciation, to the used ten year old train, which had been bought by Lawless for Processing for $32,500 and for an installed cost (in San Angelo) of about $69,000. Melone also in effect conceded that, twenty per cent allowance for depreciation over ten years would be reasonable. The basis of Melone's concession, or whether it was made as a matter of accounting or practical usefulness, did not appear. Lawless's counsel now argues that the value of the installed second-hand, ten year old wool scouring train should be viewed as the same as the installed cost of a wholly new train depreciated by twenty per cent. We cannot regard Melone's testimony (even if Melone properly be regarded as an expert on such equipment, or on the techniques of wool scouring, or on ac-

counting) as sufficient to offset the undeniable, practical facts of (a) the actual cost of Processing's land and buildings and their renovation and (b) the actual installed cost of the ten year old scouring train. The purchases were made in the open market within a few months of July, 1962. Accounting and depreciation concepts, and theoretical appraisals are far less persuasive than the realistic evidence of actual value in the open market of the precise real estate and second-hand equipment being valued. We think the evidence did not justify giving any substantial weight (1) as to land values, to an appraisal of going concern value of the land and buildings of a plant not then in operation, made for purposes of obtaining an SBA loan, apparently at the suggestion of an SBA official, to help justify the loan, and (2) as to equipment values, to any such escalation of actual costs of machinery and installation as was involved in Melone's testimony, just mentioned.[4] The judge's conclusion also overlooks the circumstance that what he should have appraised was not corporate assets, but a one-half (not a controlling) interest in the capital stock in a closely held corporation, with no past record of earnings and only a speculative, experimental, and uncertain future.

We ourselves, perhaps, could make a valuation of this one-half stock interest upon the evidence which is largely but not wholly documentary. We see little, if any basis, in the present record (so far as corporate asset value is relevant to the value of the corporate shares) for attributing to the land, buildings, and equipment of this untried corporation any going concern value whatsoever above the cost of such assets. We think, however, that enough may depend upon oral testimony already in the record and upon further testimony which may be adduced (including expert testimony) concerning damages so that we should remand

---

[4] We are supported in our view concerning the insubstantial nature of the evidence concerning damages by Lawless's testimony that at one time he offered to sell to Melone his "position" in respect of Processing for $25,000, less than one half of the damages awarded to Lawless by the final decree. Although this figure as a negotiating offer is by no means significant, affirmative evidence of the market value of the shares, it tends at least to negate a higher value.

the case for rehearing upon that issue only. See *Watkins* v. *Simplex Time Recorder Co.* 316 Mass. 217, 224–225; *Linse* v. *O'Meara,* 338 Mass. 338, 346. Whether the rehearing should be before the court or before a master is for the Superior Court to determine.

The final decree is reversed. The findings of the trial judge upon the issue of damages are set aside. The suit is to stand for further proceedings in the Superior Court upon the issue of damages only.

*So ordered.*