ROBERT KRASNECKY & another[1] *vs.* DAVID MEFFEN & another.[2]

No. 99-P-700.

Hampshire. December 6, 2001. - November 12, 2002.

Present: JACOBS, KANTROWITZ, & KAFKER, JJ.

*Animal. Strict Liability. Emotional Distress. Negligence,* Emotional distress, Causing loss of consortium. *Damages,* Emotional distress, Loss of consortium. *Trespass.*

The plaintiffs in a civil action were not entitled to damages for emotional distress arising from the death of their sheep caused by the defendants' dogs, where, putting aside the issue whether noneconomic damages can be recovered for injuries to companion animals, the plaintiffs' absence at the time of the killing of their sheep and the fact that they did not learn of the slaughter until the following day precluded any recovery for the emotional distress they suffered. [421-423]

The plaintiffs in a civil action were not entitled to damages for loss of the companionship of their sheep that had been killed by the defendants' dogs, where, putting aside the issue whether noneconomic damages can be recovered for injuries to companion animals, G. L. c. 229, § 2, confines recovery of all damages for loss of consortium to those instances in which a tortfeasor causes the death of a person, and therefore precludes recovery on claims related to the death of animals. [423]

The judge in a civil action properly granted summary judgment to the defendants on a claim for trespass of the defendants' dogs on the plaintiffs' property, which resulted in the dogs killing the plaintiffs' sheep, where there was no indication as to where the parties' properties were located in relation to each other or how the dogs happened to appear on the plaintiffs' property, and consequently, it could not be said that what transpired was "in the usual course of events" so as to render the defendants liable for the trespass; moreover, no case law supported the proposition that the negligent release of a dog gave rise to a trespass action. [424]

CIVIL ACTION commenced in the Superior Court Department on April 19, 1996.

[1] Anne Krasnecky.

[2] Patricia Meffen.

A motion for partial summary judgment was heard by *Mary-Lou Rup*, J., and the case was heard by *Robert H. Bohn, Jr.*, J.

*Steven M. Wise* for the plaintiffs.

*Robert F. Feeney* for the defendants.

JACOBS, J. On April 24, 1993, two dogs owned by the defendants entered onto the plaintiffs' residential property in the town of Ware and killed seven of the plaintiffs' sheep. The plaintiffs learned of these killings the next day when they returned to their home after an out-of-State trip. They later filed a complaint against the defendants in the Superior Court, claiming the sheep were "companion animals" and essentially seeking damages for emotional distress and loss of companionship and society.

*Procedural background.* The plaintiffs' complaint, in its final amended form, contains six counts. Count 1 seeks damages for violation of G. L. c. 140, § 155.[3] Count 2 claims strict liability under the common law and asks for damages for emotional distress and permanent loss of the sheep, including loss of their companionship and society. The damage demand of count 2 explicitly excludes "market value or nominal damages." Count 3 is for trespass to real estate; counts 4 and 5 are for intentional and negligent infliction of emotional distress, respectively; and count 6 is labeled "negligence/recklessness" and seeks the same damages as count 2.

The defendants filed a motion for summary judgment which was allowed as to counts 3, 4, and 5. After the plaintiffs refused to respond to discovery requests relating to the market value of the slain sheep, the defendants moved to prohibit the plaintiffs from offering such evidence. In the same motion, they also sought to preclude evidence of any emotional distress suffered by the plaintiffs. Plaintiffs' counsel stated that his clients did not "intend to offer any evidence of the market value of [the sheep] because they believe that they are their family members and that it is morally inappropriate for them to seek market value damages for the death of their family members." At the hearing on the motion, there was uncontroverted testimony and

---

[3]That statute, in pertinent part, makes the owner or keeper of a dog strictly liable for any damage caused by that dog "to either the body or property of any person."

documentary evidence establishing that the death of the sheep caused the plaintiffs to suffer severe emotional distress and associated physical problems.

The judge decided that the plaintiffs did not have "a legally cognizable claim for emotional distress occasioned by [the] loss" of the sheep, and accordingly allowed the motion to preclude evidence of emotional distress. Both parties then waived their right to a jury trial and submitted the case for a determination on its merits.[4] The judge thereupon ordered that judgment enter for the plaintiffs on count 1 in the amount of one dollar and that counts 2 and 6 be dismissed. Based on those orders and the previous allowance of the defendants' motion for summary judgment, final judgment entered for the defendants on counts 2 through 6 and for the plaintiffs in the amount of one dollar on count 1. The plaintiffs appeal, arguing that partial summary judgment should not have entered for the defendants on counts 3 and 4[5] and that they were entitled to noneconomic damages under counts 1, 2, and 6. We affirm.

*Factual background.* The plaintiffs argue that the term "companion animal" is not limited to cats and dogs and that the evidence at the motion hearing established that the slain sheep were pets and "companion animals" to them.[6] That evidence indicates that the plaintiffs regarded the sheep as their "babies" and spent six or seven hours a day with them, giving them names and celebrating their birthdays with special food and balloons. They patted, hugged, and brushed the sheep and baked snacks for them. When the sheep were young, the plaintiffs welcomed them into their home for up to four weeks at a time,

---

[4]The parties reserved their rights to a jury trial in the event that an appellate court later permitted the issue of noneconomic damages to go to trial.

[5]The plaintiffs make no argument with respect to the count alleging intentional infliction of emotional distress.

[6]The plaintiffs, relying on a text on veterinary ethics, describe the term "companion animal" as referring to any nonhuman animal involved with one or more human beings in a relationship that is "at the very least a continuous, bidirectional relationship . . . that brings a significant benefit to a central aspect of the lives of each, which is in some sense voluntary, and in which each party treats the other not just as something entitled to respect and benefit in its own right, but also as an object of admiration, trust, devotion, or love." The plaintiffs' reference for this material is Tannenbaum, Veterinary Ethics 125 (1989).

bottle fed them, and allowed them to run through their home. The evidence also indicates that the plaintiffs suffered significant emotional distress and related physical problems not only at the time they returned from a trip to Syracuse, New York, and learned that the sheep had been killed on the previous day, but also when they viewed the dead sheep in a back yard hole in which they had been placed and partially covered with dirt. At no time did they have any interest in deriving any economic benefit from the sheep or from their wool or milk. Also, there was evidence in the summary judgment materials to the effect that (1) the defendants were aware that their dogs often ran loose; (2) the dogs had attacked and killed a neighbor's rabbits; (3) the defendants had been asked to restrain the dogs; and (4) on April 24, 1993, the dogs had run off while one of the defendants was attempting to tie them to a run in a kennel in the defendants' yard.

*Discussion.* By refusing to offer evidence of economic loss, the plaintiffs essentially limited the damages component of their complaint to damages related to their claims of emotional distress and loss of companionship and society.[7]

*Emotional distress.* Our decisional law permits certain persons to recover damages in tort for emotional distress resulting from an injury to a third party.[8] *Dziokonski* v. *Babineau,* 375 Mass. 555, 568 (1978). For the most part, the class of persons allowed such recovery has been limited to "[a] parent of or another person closely related to a third person directly injured by the tortfeasor's conduct." *Migliori* v. *Airborne Freight Corp.,* 426 Mass. 629, 632 (1998). Whether that class may be expanded to include persons who suffer the loss of a companion animal is a

---

[7] The plaintiffs' damage claims for medical expenses are derivative of and reliant upon the validity of the claims of emotional distress.

[8] Because a claim for emotional distress has been held to be distinct from a claim for wrongful death, *Cimino* v. *Milford Keg, Inc.,* 385 Mass. 323, 334 (1982); *Miles* v. *Edward O. Tabor, M.D., Inc.,* 387 Mass. 783, 789 n.8 (1982), we analyze the plaintiffs' emotional distress counts outside of G. L. c. 229, § 2, the wrongful death statute, which, in any event, does not address damages for emotional distress. Also, contrary to the argument of the plaintiffs, and notwithstanding any perceived inadequacies in the wrongful death statute, it appears anomalous, absent legislation, to permit more extensive recovery for the death of an animal than for the death of a person.

novel question in this jurisdiction.[9] In the factual circumstances of this case, however, we do not reach that issue.

Among the pragmatic judgments applied to claims of emotional distress are those imposing requirements of spatial and temporal proximity upon plaintiffs. *Id.* at 633. Recovery has been limited to those plaintiffs who witness the injury or come upon the injured party at the scene of the injury or immediately after the infliction of the injury. *Dziokonski* v. *Babineau, supra* at 568. *Ferriter* v. *Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 518 (1980). See *Cohen* v. *McDonnell Douglas Corp.,* 389 Mass. 327, 341-342 (1983) (recovery for negligent infliction of emotional distress denied where plaintiff did not learn of her son's death in distant airplane crash until seven hours after it occurred); *Stockdale* v. *Bird & Son, Inc.,* 399 Mass. 249, 251-252 (1987) (recovery for negligent infliction of emotional distress properly denied where plaintiff did not learn of her son's death until four hours after it occurred and did not view his body until next day); *Nancy P.* v. *D'Amato,* 401 Mass. 516, 522 (1988) ("[e]ven if the family member's presence were not a condition of liability [for intentional or reckless infliction of emotional distress], we would normally require . . . substantially contemporaneous knowledge of the outrageous conduct . . ."); *Anthony H.* v. *John G.,* 415 Mass. 196, 199 (1993) (to recover for intentional infliction of emotional distress, plaintiff must be present at time of defendant's misconduct). Putting aside the broader issue of noneconomic damage for injuries to companion animals, under the pragmatic position taken by our case law, the plaintiffs' absence at the time of the killing of their sheep and the fact that they did not learn of the slaughter until the following day alone preclude any recovery for the emotional distress suffered by them.

In the circumstances, it was reasonably foreseeable that the plaintiffs would suffer emotional distress upon learning of the slaughter of the sheep and seeing their bodies. It would be il-

---

[9]The plaintiffs, in calling for such an expansion, rely in part on *Sullivan* v. *Boston Gas Co.,* 414 Mass. 129, 140 (1993), in which the nature of the injured interest apparently was not made an appellate issue, but in which the emotional distress claims of two persons who witnessed the destruction of their home was permitted to go to trial.

logical, however, to accord the plaintiffs greater rights than would be recognized in the case of a person who suffers emotional distress as a result of the tortiously caused death of a member of his immediate family. It has been explained in such a case that limiting liability on the basis of admittedly arbitrary factors such as presence or temporal proximity "must be employed for policy reasons to prevent an unreasonable expansion of liability for the multitude of injuries that could fall within the bare principle of reasonable foreseeability." *Cohen* v. *McDonnell Douglas Corp.*, *supra* at 341.

*Loss of companionship and society.* The plaintiffs' claims of damages for loss of the sheep and their companionship and society, if cognizable under any theory, fall within the claims encompassed by the concept of loss of consortium.[10] Again putting aside the broader issue of recovery of noneconomic damages for injuries to companion animals, the absence of statutory authority precludes recovery on the plaintiffs' loss of consortium claims related to the death of the sheep. In *Hallett* v. *Wrentham*, 398 Mass. 550, 556 (1986), the court concluded that a separate action for loss of consortium related to the death of a loved one may not be maintained outside of G. L. c. 229, § 2. That statute limits the right to bring a wrongful death action, see *Pobieglo* v. *Monsanto Co.*, 402 Mass. 112, 116 (1988), and confines recovery of all damages to those instances in which a tortfeasor "causes the death of a person."[11] There is no ambiguity in the statute. Any expansion is best left to the Legislature. See *St. Germaine* v. *Pendergast*, 411 Mass. 615, 625 (1992) (discussing how G. L. c. 231, § 85X, creating cause of action for loss of filial consortium, was enacted as direct legislative response to *Norman* v. *Massachusetts Bay Transp. Authy.*, 403 Mass. 303, 308 [1988], which declined to recognize right of recovery for such loss).

[10]Broadly defined, "consortium" includes "companionship, cooperation, affection [and] aid." Black's Law Dictionary 304 (7th ed. 1999).

[11]General Laws c. 229, § 2, provides in pertinent part that "[a] person who (1) by his negligence causes the death of a person, or (2) by willful, wanton or reckless act causes the death of a person . . . shall be liable in damages . . . for the loss of the . . . society, companionship [and] comfort . . . of the decedent . . . ."

*Trespass.* Relying on the holding in *Sheppard Envelope Co.
v. Arcade Malleable Iron Co.,* 335 Mass. 180, 187 (1956), that
"[a] landowner who sets in motion a force which, in the usual
course of events, will damage the property of another is guilty
of a trespass on such property," the plaintiffs argue that the
defendants are guilty of such a trespass and, therefore,
responsible in damages for the plaintiffs' emotional distress and
the permanent loss of their sheep. While the summary judgment
materials establish that the defendants acted negligently or reck-
lessly, they do not indicate where the parties' properties were
located in relation to each other or how the dogs happened to
appear on the plaintiffs' property on April 24, 1993. Conse-
quently, it cannot be said that what transpired was "in the usual
course of events." Moreover, no decision of our courts has been
brought to our attention in which the negligent release of a dog
has been held to support a trespass action.[12] Such an extension
of our case law would unnecessarily and less than completely
duplicate the liability established by G. L. c. 140, § 155.

We conclude that the damages sought by the plaintiffs, in the
circumstances, are unavailable to them as matter of law, and
that, at most, the only damages to which they are entitled are
the nominal damages that they have been awarded. Accordingly,
we affirm the judgment for the defendants on counts 2, 3, 4, 5,
and 6, and for the plaintiffs on count 1 in the amount of one
dollar.

*So ordered.*

---

[12]A Federal District Court case relied on by the plaintiffs only holds that
persons who "willfully" allowed their livestock to graze on government land
after cancellation of their grazing permit were guilty of a trespass warranting
issuance of an injunction and an order requiring payment of a fee for
unauthorized grazing. *United States* v. *Gardner,* 903 F. Supp. 1394, 1402-
1403 (D. Nev. 1995), aff'd, 107 F.3d 1314 (9th Cir.), cert. denied, 522 U.S.
907 (1997).