JOHN IRWIN & another[1] *vs.* ARKADY DEGTIAROV & another.[2]

No. 13-P-450.

Middlesex. November 7, 2013. - April 25, 2014.

Present: WOLOHOJIAN, AGNES, & SULLIVAN, JJ.

*Dog. Animal. Damages,* Tort. *Practice, Civil,* Damages. *Veterinarian.*

This court concluded that, under G. L. c. 140, § 155, which imposes strict li-
ability for damage caused by dogs, reasonable veterinary costs that are
reasonably incurred can be recovered by the owner of an animal injured by
a dog even if such costs exceed the market value or replacement cost of
the animal; accordingly, in a civil action brought by plaintiff dog owners
against the defendant owners of a dog that attacked and severely injured
the plaintiffs' dog, to recover, pursuant to § 155, veterinary costs resulting
from emergency surgery, the District Court judge did not err in awarding
such costs in full, where the evidence amply supported the judge's finding
that the costs were reasonable. [235-240]

CIVIL ACTION commenced in the Newton Division of the District
Court Department on December 18, 2008.

The case was heard by *Dyanne J. Klein,* J.

*John G. Neylon* for the defendants.

*Joseph I. Rogers* for the plaintiffs.

WOLOHOJIAN, J. An unprovoked attack by the defendants' un-
leashed German shepherd caused the plaintiffs' Bichon Frisé
severe internal injuries, external bruising, and wounds to the
head, neck, abdomen, and chest. Emergency surgery was success-
ful but expensive, with veterinary costs ultimately amounting to
over $8,000. After a bench trial, a District Court judge found
those costs to be both reasonable and necessary and awarded
them in full.[3] The judgment was affirmed by the Appellate

---

[1]Marcia Irwin.

[2]Irina Deresh, doing business as Boston Kennels.

[3]The further facts found by the judge are as follows:

"On February 17, 2007, in the early afternoon, plaintiff John Irwin

Division. The sole issue on appeal is whether damages should be capped at the market value of the dog, regardless of the reasonableness of the veterinary costs necessary to treat the dog's injuries. We affirm.

The plaintiffs sued[4] under G. L. c. 140, § 155, as amended by St. 1934, c. 320, § 18, which since 1791[5] has imposed strict liability[6] for damage caused by dogs:

> "If any dog shall do any damage to either the body or

walked outside his front door with his Bi[c]hon Frise, Peppermint. While in Irwin's front yard, Peppermint was attacked by an unleashed German Shep[he]rd owned by the defendants; a man who had another German Shep[he]rd on a leash accompanied the attacking dog. The German Shep[he]rd held onto Peppermint by the neck, shaking him back and forth, while Peppermint 'screamed' in distress. Plaintiff John Irwin, who had been disabled by a stroke in 2003 and walked with a cane, was knocked down in the ensuing fracas, and unable to get up until a neighbor assisted him. The man accompanying the German Shep[he]rds was finally able to separate the dogs. He leashed the attacking dog and walked away with both dogs; a neighbor followed him. Upon being freed, Peppermint ran into the house and hid under a bed in a guest bedroom. The police were called.

"Upon plaintiff Marcia Irwin's return home at approximately 4:00 p.m., she took Peppermint to Veterinary Emergency & Specialty Center of New England in Waltham, MA. Peppermint was in critical condition, with severe internal injuries, external bruising and multiple dog bites over his head, neck, abdomen, and chest. Emergency surgery was performed, wounds were drained and sutured, and a liver lobe was removed. Peppermint remained at the Veterinary Center for four days, and returned twice for follow-up care. The plaintiffs incurred damages of $8,608.05 for Peppermint's treatment at the Veterinary Center.

"At the time of the attack on Peppermint (on plaintiffs' property), Plaintiff John Irwin was not committing a trespass or other tort, and was not teasing, tormenting or abusing the German Shep[he]rd."

[4]The plaintiffs also sued for negligence, trespass, and nuisance. They do not appeal from the adverse judgment against them on those claims.

[5]The statute originally mandated treble damages, see St. 1791, c. 38, § 4, and sounded in trespass until 1860 when it became a tort. See G.S. 1860, c. 88, § 59. From 1797 to 1812, the statute did not impose multiple damages. See St. 1797 c. 53, § 5; St. 1798, c. 54, § 3. From 1812 until the 1934 amendment, the statute imposed double damages. See St. 1812, c. 146, § 3; R.S. 1836, c. 58, § 13; G.S. 1860, c. 88, § 59; P.S. 1882, c. 102, § 93; R.L. 1902, c. 102, § 146; St. 1934, c. 320, § 18.

[6]"The statute is indifferent to any question of negligence." *Brown* v. *Bolduc,*

property of any person, the owner or keeper . . . shall be liable for such damage, unless such damage shall have been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog."

The statute has long been recognized to be remedial, not penal, "giving all the damages to the person injured." *Le Forest* v. *Tolman*, 117 Mass. 109, 110 (1875), citing *Mitchell* v. *Clapp*, 12 Cush. 278 (1853). Its purpose "is to protect all persons, whatever may be their age or condition, who, through no fault of their own, are exposed to attacks from dogs, and to induce their owners and keepers to hold them under proper restraint and control." *Munn* v. *Reed*, 4 Allen 431, 433 (1862). See *Sherman* v. *Favour*, 1 Allen 191, 192 (1861) (statute "was doubtless intended to provide a remedy co-extensive with the mischief, which any person might sustain by reason of any act of a dog, which occasioned injury to him or his property"). The statute is an expansion of the common law in that it eliminates the need to prove that the owner "knew of the dangerous character and habits of his dog, or that the dog was in fact accustomed to bite." *Pressey* v. *Wirth*, 3 Allen 191, 191 (1861). See *Galvin* v. *Parker*, 154 Mass. 346, 348 (1891). See also Bishop, Prima Facie Case § 45.4 (5th ed. 2005).

Although the statute imposes strict liability for "any damage" caused by a dog, it is silent as to how to measure such damage.[7] We turn, accordingly, to the common law.[8]

---

29 Mass. App. Ct. 909, 910 (1990). See *Malchanoff* v. *Trueheart*, 354 Mass. 118, 123 (1968) ("statute imposes strict liability"). Intent (whether of owner or dog) is likewise irrelevant. *Hathaway* v. *Tinkham*, 148 Mass. 85, 88 (1888).

[7]Other States also impose liability for injury caused by dogs. See Conn. Gen. Stat. § 22-357 (2013); Del. Code Ann. tit. 9, § 913 (2011); Ga. Code Ann. § 4-8-4(a) (2013); Haw. Rev. Stat. § 142-74 (2013); La. Civ. Code Ann. art. 2321 (2008); Me. Rev. Stat. Ann. tit. 7, § 3961 (2002); N.H. Rev. Stat. Ann. § 466:19 (2007); N.M. Stat. Ann. § 77-1-1 (1999); N.C. Gen. Stat. § 67-4.4 (2013); Ohio Rev. Code. Ann. § 955.28(B) (2012); W. Va. Code § 19-20-13 (2007); Wis. Stat. Ann. § 174.02 (West 2006). However, their provisions are not identical, and we have found no appellate decisions construing them that address the question with which we are presented here.

[8]The Legislature is, of course, free to amend the language of the statute to specify a different measure of damages.

Diminution in market value is the common method of measuring damage to property under our common law.[9] However, "market value does not in all cases afford a correct measure of indemnity, and is not therefore 'a universal test.' " *Trinity Church* v. *John Hancock Mut. Life Ins. Co.*, 399 Mass. 43, 48 (1987), quoting from *Wall* v. *Platt*, 169 Mass. 398, 405-406 (1897). "Replacement or restoration costs have also been allowed as a measure of damages . . . where diminution in market value is unavailable or unsatisfactory as a measure of damages." *Id.* at 49. "This is but another way of recognizing that more complex and resourceful methods of ascertaining value must be used where the property is unusual and where ordinary methods will produce a miscarriage of justice." *Glavin* v. *Eckman*, 71 Mass. App. Ct. 313, 318 (2008) (quotation and ellipsis omitted). See Restatement (Second) of Torts § 911(1) (1979).

Although the common law considers dogs (like other animals) to be property, see *Uhlein* v. *Cromack*, 109 Mass. 273, 275 (1872); *Lacker* v. *Strauss*, 226 Mass. 579, 580 (1917); *Baer* v. *Tyler*, 261 Mass. 138, 140 (1927), we have never limited recovery for animals that are injured (but not immediately killed)[10] to diminution in market value. Instead,

> "if an animal is injured in such a way that proper care and attention reasonably may be expected to effect a cure, which will leave the damage from the injury much less than if [the animal] died, it is the duty of the owner to give it such care and attention, in order that the damages may not be augmented by neglect. The expense properly incurred for this purpose is a part of the damage to the owner, for which he is entitled to compensation, as well as for the diminution in value or other loss that may finally result directly from the injury notwithstand-

---

[9]"One predicate for the application of this principle is the existence of a relevant market in which the property can be freely exchanged or sold. Another predicate is that the diminution of fair market value be a fair and reasonable measure of the loss suffered by the owner." *Massachusetts Port Authy.* v. *Sciaba Constr. Corp.*, 54 Mass. App. Ct. 509, 514 (2002) (citation omitted).

[10]Where an animal is killed as a result of some fault of the defendant, but veterinary or other treatment expenses are not involved, recovery has historically been based on market value. See *Uhlein* v. *Cromack*, 109 Mass. at 274.

ing these efforts. These expenses, reasonably incurred in making a proper effort to diminish the loss, are to be paid as well when the effort is unavailing as when it is successful. It would be most unjust to impose upon an owner the duty of trying to effect a cure, if that is what ought to be done, and to leave him remediless for expenses so incurred, if his attempt proves unsuccessful. Of course he is bound to act in good faith and to exercise a sound discretion, so as not to make an unreasonable expenditure, in reference to the probability of diminishing the damages; but if money is prudently expended in the hope of mitigating the injury, and notwithstanding this the animal is lost, there is no good reason why this expense, as well as the value of the animal, should not be included as a part of the damages."

*Atwood* v. *Boston Forwarding & Transfer Co.*, 185 Mass. 557, 558-559 (1904).

Whatever suggestion this passage contains to the effect that market value caps recovery of reasonable veterinary expenses, that suggestion is belied by the fact that the court affirmed an award of reasonable veterinary costs *plus* the market value of the animal. We read *Atwood* to stand for the proposition that reasonableness is the touchstone for determining whether, and to what extent, veterinary costs can be recovered. If it is reasonable in the circumstances presented to incur the veterinary costs at the time they are undertaken, then the owner of the injured animal may recover them.[11] *Ibid.* Our reading of the common law leads us, therefore, to conclude that reasonable veterinary costs that are reasonably incurred can be recovered under G. L. c. 140, § 155, even if they exceed the market value or replacement cost of an animal injured by a dog.

Whether particular veterinary costs are reasonable, and whether

---

[11]Although different jurisdictions have arrived at a similar conclusion in different ways, they have awarded veterinary costs as damages for injuries to animals, either as part of a market value analysis or otherwise. See *Kaiser* v. *United States*, 761 F. Supp. 150, 156 (D.D.C. 1991); *Nichols* v. *Sukaro Kennels*, 555 N.W.2d 689, 691-692 (Iowa 1996); *Burgess* v. *Shampooch Pet Indus., Inc.*, 35 Kan. App. 2d 458, 463-465 (2006); *Kurash* v. *Layton*, 251 N.J. Super. 412, 417 (1991); *Hyland* v. *Borras*, 316 N.J. Super. 22, 25-26 (1998).

it is reasonable to incur them, will depend on the facts of each case. See *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 799 (1976) ("A determination of reasonableness normally is a question of fact"). Among the factors to be considered are the type of animal involved, the severity of its injuries, the purchase and/or replacement price of the animal, its age and special traits or skills, its income-earning potential, whether it was maintained as part of the owner's household, the likelihood of success of the medical procedures employed, and whether the medical procedures involved are typical and customary to treat the injuries at issue. Although the owner's affection for the animal may be considered in assessing the reasonableness of the decision to treat the animal, the owner cannot recover for his or her own hurt feelings, emotions, or pain. Nor is the owner entitled to recover for the loss of the animal's companionship or society. *Krasnecky* v. *Meffen*, 56 Mass. App. Ct. 418, 423 (2002).

The defendants in this case mount no challenge to the reasonableness of the costs incurred other than to argue that it is unreasonable to spend more to treat a dog than it would cost to replace it.[12] Although the market value of the dog is a factor that may be considered, it alone does not demonstrate that the judge erred in awarding the full veterinary costs. The owner of the emergency veterinary facility, an experienced veterinarian, testified that the attack left the dog in profound hypovolemic shock with wounds to the head, neck, abdomen, and chest. Diagnostic tests showed that the dog "was bleeding quite profusely from the abdomen." Blunt crushing wounds to the dog's chest and abdomen had caused one of the dog's liver lobes to bleed and the lobe needed to be surgically removed. Surgery was performed within an hour of the dog's arrival at the facility, and the dog remained there for a few days after the operation. The rest of the dog's recovery took place at home. It was the veterinarian's opinion that the dog would have died without the treatment it received.

The veterinarian also testified that the facility is a twenty-four-hour emergency specialty practice with pricing that is competi-

---

[12]There was no evidence of the market value of the dog. Both parties appear to have proceeded below — as they did on appeal — with the understanding that the dog's market value was less than the veterinary costs.

tive with that of similar facilities in Massachusetts, Connecticut, and Rhode Island. The facility's prices are "based on the American Animal Hospital Association pricing guidelines." Because overhead is high, the facility's profit margin is not. The bills were introduced in evidence, and the veterinarian testified that the costs reflected in them were necessary, fair, and reasonable. In short, the judge's finding that the veterinary costs were reasonable was amply supported by the evidence.

> *Decision and order of the Appellate Division affirmed.*