NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

23-P-73                                          Appeals Court

BRETT LYMAN  vs.  SASHA LANSER.

No. 23-P-73.

Middlesex.     November 8, 2023. - March 7, 2024.

Present:  Sacks, Brennan, & D'Angelo, JJ.

Dog.  Animal.  Tenants in Common.  Injunction.  Practice, Civil,
    Injunctive relief, Interlocutory appeal.  Appeals Court,
    Appeal from order of single justice.  Frauds, Statute of.
    Contract, Performance and breach, Construction of contract,
    Specific performance.

    Civil action commenced in the Superior Court Department on
June 24, 2022.

    A motion for a preliminary injunction was heard by Shannon
Frison, J.

    A proceeding for interlocutory review was heard in the
Appeals Court by Grant, J.

    Jeremy M. Cohen (Robert D. Stewart also present) for the
plaintiff.
    Philip A. Bongiorno for the defendant.

    SACKS, J.  The plaintiff brought this Superior Court action

against his former romantic partner, the defendant, seeking

specific performance of an agreement to equally share possession

of their jointly-owned property, a Pomeranian dog named Teddy Bear. The plaintiff alleged that Teddy Bear is a "specific and unique chattel." The plaintiff sought, and a motion judge issued, a preliminary injunction requiring the defendant to share Teddy Bear with the plaintiff for alternating two-week periods. The defendant sought relief from a single justice of this court, arguing that, although the dog was coowned, the judge had no authority to order "shared custody" of a dog. The single justice vacated the preliminary injunction, concluding that the motion judge had improperly treated Teddy Bear as if he were the parties' child. The plaintiff appealed the single justice's order to this court. We conclude that there was insufficient basis to vacate the preliminary injunction, and therefore we reverse the single justice's order.

Background. We draw our summary of facts from the verified complaint and the plaintiff's affidavit in support of his motion for a preliminary injunction; the defendant submitted no evidence in opposition.[1] At the time the parties met in 2016, the plaintiff and a previous romantic partner coowned a Pomeranian dog and shared possession of him on an alternating

_____

[1] Attached to the defendant's memorandum in opposition was a certificate indicating that she had registered Teddy Bear as an emotional support animal in an Internet database. The certificate was dated November 30, 2021, which was after the parties' breakup.

basis. The plaintiff and the defendant "loved" that dog and found it hard to have him only part time. They decided to buy their own Pomeranian that they "could share together."

The parties agreed that if they acquired a dog and then later separated, they would share the dog equally. In June of 2018, they purchased a male Pomeranian puppy and named him Teddy Bear Lanser-Lyman. Although the ownership registration form bore only the plaintiff's name, the parties evenly split the cost of buying Teddy Bear. During the time the parties remained together, they continued to share the responsibility of caring for and training Teddy Bear, although the plaintiff asserted that he bore a significant majority of the costs, spending about $8,000 during that time.

In the summer of 2021, the parties' relationship ended, and the defendant moved out of their shared residence. The parties "communicated regularly about [their] intended plan to share Teddy Bear on an approximately equal basis." They sent text messages to each other "to work out as many details as possible to set up a predictable routine" for sharing him. In early August the defendant proposed that they exchange possession of Teddy Bear approximately every week, and it appears they exchanged possession of him several times that month and the next. Until January of 2022, the parties shared the dog amicably, although the amount of time that the plaintiff had

possession of Teddy Bear steadily decreased, in part due to the plaintiff's conflicting family obligations.

In January of 2022, the defendant moved to a different apartment, and so the parties agreed to temporarily suspend their sharing arrangement to allow Teddy Bear to adjust to the defendant's new home. This temporary suspension continued until March of 2022 when, according to the plaintiff, the defendant cut off all communication with him and refused to allow him access to Teddy Bear.

The plaintiff then commenced this action for conversion and breach of contract. Expressly disclaiming any request for damages, the plaintiff, in his verified complaint, sought only equitable relief, including specific performance of the parties' agreement to equally share possession of Teddy Bear.

The plaintiff moved for a preliminary injunction to restore his asserted joint ownership and possessory rights to the status quo that existed before the defendant refused him access to Teddy Bear. He argued that although "the law regards . . . dogs as property, dogs are property of a distinctive type and nature, living creatures with distinct personalities and [a] finite life span, clearly distinguishable from inanimate personal property." He asserted that the defendant's actions were causing him irreparable harm, in the form of the loss of Teddy Bear's companionship, which could not be remedied by money damages.

After a hearing, the motion judge credited the plaintiff's evidence of a binding agreement for shared possession. She found that "[t]he parties each paid half of the price of the dog, expressed intent to share custody even if they separated, and acted on that agreed/shared custody until Jan[uary] 202[2]." Her preliminary injunction, referring to "the property known as Teddy Bear," ordered that "[b]ased upon joint ownership rights, both parties shall be allowed to have Teddy Bear for alternating [two]-week periods. Beginning on [November 27, 2022], Teddy Bear will be exchanged at a mutually agreeable location for each exchange (Sunday-Sunday)."

The defendant then petitioned a single justice of this court for relief from the preliminary injunction. See G. L. c. 231, § 118, first par. The single justice acknowledged as undisputed that the parties had equally split the cost of purchasing the dog and agreed to co-own him. The single justice nevertheless found no Massachusetts authority for treating a dog, which is personal property, as unique, such that an order for specific performance of their sharing agreement could be appropriate. The single justice noted a distinction between specific enforcement of written contracts concerning real property and an oral contract concerning personal property.

The single justice concluded that the motion judge abused her discretion by "effectively treat[ing] the dog . . . as if it

were the parties' child," instead of as personal property. The single justice therefore vacated so much of the preliminary injunction as required the parties to alternate possession of Teddy Bear.[2] The plaintiff then appealed to this court. See G. L. c. 231, § 118, second par.

Discussion. 1. Standard of review. When we review a single justice's order issued under G. L. c. 231, § 118, first par., "[t]he essential legal question" before us is "whether the single justice abused [her] discretion by entering an order without having a supportable basis for doing so" (citation omitted). Aspinall v. Philip Morris Cos., 442 Mass. 381, 390 (2004), S.C., 453 Mass. 431 (2009). "Answering that question, however, requires examination of the trial [court] judge's order," because:

> "[t]he single justice is not a fact finder and must accept any relevant facts found by the judge when those facts have support in the record. Considerable deference is also required on the part of the single justice to determinations by the judge, especially where those determinations involve an exercise of discretion. In most cases, based on the deference normally accorded determinations by the judge who heard the matter in the first instance, the single justice will decline to act on an application for relief under G. L. c. 231, § 118, first par., that does not disclose clear error of law or abuse of discretion." (Quotation and citation omitted.)

Id.

---

[2] The single justice left in place those parts of the preliminary injunction barring the defendant from transferring ownership of Teddy Bear or removing him from the Commonwealth.

The motion judge, in turn, was governed by the familiar preliminary injunction standard:

> "To succeed in an action for a preliminary injunction, a plaintiff must show (1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the plaintiff's likelihood of success on the merits, the risk of irreparable harm to the plaintiff outweighs the potential harm to the defendant in granting the injunction. . . . When . . . a party seeks to enjoin governmental action, the court also considers whether the relief sought will adversely affect the public."  (Citation omitted.)

Tri-Nel Mgt., Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2001).  "At the preliminary injunction stage, an appellate court will not reverse the action of the motion judge if there is a supportable legal basis for that action."  Boston Harbor Commuter Serv., Inc. v. Massachusetts Bay Transp. Auth., 46 Mass. App. Ct. 122, 123 (1999).  Of course, "[i]f the basis on which the preliminary injunction was issued is wrong as a matter of law, the preliminary injunction cannot be sustained."  Doe v. Attorney Gen. (No. 1), 425 Mass. 210, 212 (1997).

2.  Likelihood of success on the merits.  As already stated, there is no dispute that the parties jointly own Teddy Bear.  Domestic animals are personal property, see Irwin v. Degtiarov, 85 Mass. App. Ct. 234, 237 (2014), and may be owned by a tenancy in common,[3] see Goell v. Morse, 126 Mass. 480, 481

---

[3] Personal property also may be owned through a joint tenancy or through a tenancy by the entirety.  See Marble v.

(1879) (parties who each contributed to purchase price "were the owners as tenants in common of the horse").

a. Existence of agreement. The motion judge, having found that the parties evenly split the purchase price of Teddy Bear, "expressed intent to share custody even if they separated, and acted on that agreed/shared custody" for some months after their separation, could view the plaintiff as having stated a meritorious claim for breach of a contract to equally share possession of Teddy Bear.[4]  There is no doubt that tenants in common may make an agreement governing their respective rights in personal property.  To be sure, our case law most often

_____

Jackson, 245 Mass. 504, 507 (1923).  Absent any contrary indication, it could be presumed that the parties owned Teddy Bear as tenants in common rather than as joint tenants.  Cf. Battle v. Howard, 489 Mass. 480, 484-485 (2022) ("unless the intent to create a joint tenancy is clearly expressed, a deed or devise will be treated as creating a tenancy in common").  This case does not require us to determine whether the parties own Teddy Bear as tenants in common or as joint tenants.

[4] The judge did not address the plaintiff's conversion claim, and we need not do so either.  Because the issue may arise in further proceedings in the trial court, we do address one limited aspect of the defendant's response to that claim -- that one coowner cannot seek a remedy for conversion by the other, "since both are equally entitled to possession and the possession of one is the possession of both."  Johnson v. Nourse, 258 Mass. 417, 419 (1927).  Cf. Jarvis v. De Peza, 251 Mass. 447, 448 (1925) (similar, in replevin action to obtain possession of jointly owned car).  These cases have no apparent application to a claim against a coowner seeking specific performance of an agreement to share possession of property in a particular manner.  Cf. Goell, 126 Mass. at 482 (where tenants in common agreed neither party should sell horse without other's agreement, sale by one was conversion).

addresses agreements governing the parties' rights to transfer
ownership interests in such property. See Goell, 126 Mass. at
482 (proceeds from sale of horse); Somerby v. Buntin, 118 Mass.
279, 287 (1875) (patent); Clark v. Flint, 22 Pick. 231, 241
(1839) (brig). We see no reason, however, why tenants in common
may not make enforceable agreements regarding their rights vis-
à-vis each other to possess and use their property. See
Somerby, supra (oral agreement to hold letters patent jointly
could be enforced through order for specific performance). Cf.
Tucci v. DiGregorio, 358 Mass. 493, 497 (1970) (if tenants in
common of premises including two-family house could not agree
that each would occupy a particular half of premises, it could
be partitioned under G. L. c. 241). At this preliminary
injunction stage, at least, the defendant has offered no such
reason.

That the claimed agreement here is lacking in detail is not
fatal to the plaintiff's likelihood of success on the merits.
Although "[a] contract must be complete and definite to support
a decree for specific performance, . . . a contract embodying
all the material factors for the accomplishment of a transaction
undertaken by the parties is not incomplete or indefinite
because it fails to express in terms some matters concerning the
performance of the contract and reasonably necessary for the
attainment of its object." Shayeb v. Holland, 321 Mass. 429,

430 (1947).  For example, even where a contract does not expressly state "an essential element" such as the purchase price of real estate, the contract may reasonably be interpreted to require "a fair and reasonable price."  Id. at 432.

Here, the plaintiff stated in his affidavit supporting his motion for a preliminary injunction that the agreement was to "share Teddy Bear on an equal basis" in the event the parties separated.  Such an agreement might be interpreted to require that possession be shared in a reasonable manner.  The record indicated that the parties had successfully shared possession of Teddy Bear for many weeks.  Thus, the judge preliminarily ordered that Teddy Bear be exchanged every two weeks on Sunday, at a mutually agreeable location.  Moreover, in further proceedings, the plaintiff may be able to establish additional terms of the agreement.  The judge did not abuse her discretion or otherwise err in concluding that the plaintiff had a likelihood of success on his contract claim.

b.  Availability of specific performance.  Agreements regarding personal property ownership may be specifically enforced.  "Equity will specifically enforce a contract relating to chattels, if the remedy at law for damages would be inadequate, and grant relief for delivery of a thing wrongfully withheld."  Dahlstrom Metallic Door Co. v. Evatt Constr. Co., 256 Mass. 404, 415 (1926).  See Poltorak v. Jackson Chevrolet

Co., 322 Mass. 699, 700 (1948) (specific performance available for contracts for sale of chattels where damages for breach are not equivalent of promised performance). See also Somerby, 118 Mass. at 287. Actions for specific performance are within the Superior Court's general equity jurisdiction under G. L. c. 214, § 1. See Derby v. Derby, 248 Mass. 310, 313-314 (1924); Somerby, supra (construing predecessor statute, Gen. Sts. c. 113, § 2). See also G. L. c. 214, § 1A (remedy in damages does not bar action for specific performance if damages would not provide equivalent of performance).

It is no bar to specific performance that an agreement is not in writing. "Even oral contracts will be specifically enforced, when the case is not within the statute of frauds, and no complete and adequate remedy can be had by an action at law." Somerby, supra. See Derby, 248 Mass. at 313–314. Contrary to the defendant's Statute of Frauds argument here, the claimed agreement to share Teddy Bear equally in the event the parties separated was capable of performance within one year. "The Statute of Frauds applies only to contracts which by their terms cannot be performed within the year. It does not apply to contracts which may be performed within, although they may also

extend beyond, that period" (quotation omitted).  Boothby v.
Texon, Inc., 414 Mass. 468, 479 (1993).[5]

Nor was the motion judge's implicit determination that the
plaintiff had no adequate remedy at law a "clear error of law or
abuse of discretion."  Aspinall, 442 Mass. at 390.  No doubt,
specific performance of contracts relating to personal property
is the exception rather than the rule, because a damages remedy
usually suffices.  "The reason is, that, in regard to most
articles of personal property, the commodity and its market
value are supposed to be substantially equivalent, each to the
other, so that they may be readily interchanged."  Jones v.
Newhall, 115 Mass. 244, 248 (1874).  The party left without
possession obtains damages and, "with his money, may obtain
similar goods . . . presumably at the market price."  Id.
However, "[i]f the character of the property be such that the
loss of the contract will not be fairly compensated in damages
based upon an estimate of its market value, relief may be had in
equity, whether it relates to real or to personal estate."  Id.
at 248-249.

---

[5] In Boothby, the Statute of Frauds was inapplicable because
the plaintiff's contract for permanent employment "could have
been performed within one year:  [the plaintiff] could have died
or Texon could have discontinued its business, at which point
its obligation to employ [the plaintiff] would end."  414 Mass.
at 479.

We have previously recognized that, although a domestic animal is property, its market value does not always fairly measure its value to its owner.  See Irwin, 85 Mass. App. Ct. at 235, 237-238.  In Irwin, we held that the measure of damages for injury to a domestic animal may include, in addition to its "market value or replacement cost," those reasonable veterinary expenses reasonably incurred in treating the animal.  Id. at 238, citing Atwood v. Boston Forwarding & Transfer Co., 185 Mass. 557, 558-559 (1904).  The factors relevant to the reasonableness of such expenses include the animal's "age and special traits or skills," "whether it was maintained as part of the owner's household," and "the owner's affection for the animal."  Id. at 239.  Implicit in these factors is the recognition that a domestic animal's value to its owner, and thus the amount of expenses for veterinary care that the law views as reasonable, may increase based on the animal's special role in the owner's household,[6] although "the owner cannot recover for his or her own hurt feelings, emotions, or pain" or "for the loss of the animal's companionship or society."  Id.,

---

[6] The Legislature, too, has recognized the special place that domestic animals may occupy in a household.  Under G. L. c. 209A, § 11 (a), a court issuing an abuse prevention order under G. L. c. 209A, a harassment prevention order under G. L. c. 258E, or similar orders under other statutes "may order the possession, care and control of any domesticated animal owned, possessed, leased, kept or held by either party or a minor child residing in the household to the plaintiff or petitioner."

citing Krasnecky v. Meffen, 56 Mass. App. Ct. 418, 423 (2002). But Irwin, supra, (a strict liability action) and Krasnecky, supra, (a tort action) involved duties imposed by law, whereas here we deal with a claim for breach of a duty voluntarily assumed by parties to a contract, the very object of which was to obtain an animal's companionship.

"In determining whether the remedy in damages would be adequate," one significant factor is "the difficulty of proving damages with reasonable certainty." Restatement (Second) of Contracts § 360 (1981). "Some types of interests are by their very nature incapable of being valued in money. Typical examples include heirlooms, family treasures and works of art that induce a strong sentimental attachment." Id. at comment b. "Contracts may be specifically enforceable because they involve a grandfather's clock, even though it will not run, a baby's worn-out shoe, or faithful old Dobbin the faithful horse whose exchange value in the market is less than nothing." Restatement (First) of Contracts § 361 comment e (1932). See Sanford v. Boston Edison Co., 316 Mass. 631, 635 & n.1 (1944), S.C. 319 Mass. 55 (1946) (collecting cases illustrating Supreme Judicial Court's "broadening tendency in applying the remedy of specific performance").

Under these principles, the motion judge reasonably could have concluded, at least as a preliminary matter, that a damages

remedy for the defendant's breach of her agreement to equally share Teddy Bear would be inadequate to compensate the plaintiff for the loss of his equal possession. Whether that possession is described as involving the companionship of Teddy Bear (the term "use" being better suited to inanimate objects), or instead his "shared custody" (a phrase that understandably concerned the single justice and might better be avoided when discussing animals), does not seem dispositive. Although the motion judge used the phrase "shared custody," nothing in her order treated Teddy Bear as a child. Nor should anything in our decision be construed as altering the status of pets in divorce proceedings. The judge's order is supported by settled principles of property and contract law, even if there is little precedent for combining them to apply to a pet dog.[7]

3. Balance of harms. Although the motion judge did not expressly discuss the balance of harms, focusing instead on the viability of the plaintiff's contract claim, the judge reasonably could have concluded that the irreparable harm to the plaintiff, considered in light of his likelihood of success on the merits, outweighed the harm to the defendant. The

---

[7] But see Houseman v. Dare, 405 N.J. Super. 538, 542-543 (App. Div. 2009) (specific performance available to enforce plaintiff's agreement entered into with former boyfriend after relationship ended, that plaintiff would own and possess dog they had jointly purchased and owned while engaged).

plaintiff's verified complaint and affidavit stated, among other things, that he was "losing the value of his investment of time, money, [and] emotional support of Teddy [Bear] each day that [his] exercise of ownership and possessory rights to Teddy Bear is wrongfully denied."  It was a reasonable inference from the other facts asserted by the plaintiff that he had an "owner's affection for the animal," which "may be considered" in determining what relief is appropriate.  Irwin, 85 Mass. App. Ct. at 239.  The plaintiff sought not to deprive the defendant altogether of her possessory rights but only to possess the dog on an equal basis with her.  Despite the defendant's unsworn assertion that Teddy Bear was her registered emotional support animal, she offered no evidence that ordering her to share possession of Teddy Bear equally during the pendency of the action would cause her more harm than it would avoid for the plaintiff.

4.  Public interest.  Because this case does not involve a request for a preliminary injunction by or against the government, the public interest in its usual sense is not a significant factor.  Cf. Tri-Nel Mgt., Inc., 433 Mass. at 219; Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984).  Nevertheless, one additional factor affecting the propriety of specific performance deserves mention:  the burden that ongoing enforcement of pet-sharing agreements might place on our courts.

It is not difficult to foresee that disputes between joint pet owners, particularly those whose relationships have ended, could become acrimonious and require the commitment of substantial judicial resources over a protracted period of time. It might well be questioned whether the courts should allow themselves to be drawn into such matters.

This potential drawback of the remedy of specific performance is nothing new. Nearly a century ago the Supreme Judicial Court recognized that "[s]pecific enforcement will not be decreed if the performance is of such a character as to make effective enforcement unreasonably difficult or to require such long-continued supervision by the court as is disproportionate to the advantages to be gained from such a decree and to the harm to be suffered in case it is denied." McCormick v. Proprietors of the Cemetery of Mt. Auburn, 285 Mass. 548, 551 (1934), quoting Restatement (First) of Contracts § 371 (1932).[8] See Sanford, 316 Mass. at 634 (availability of specific performance remedy depends in part on whether it will involve substantial practical difficulties).

---

[8] This principle has been carried forward in the Restatement (Second) of Contracts. "A promise will not be specifically enforced if the character and magnitude of the performance would impose on the court burdens in enforcement or supervision that are disproportionate to the advantages to be gained from enforcement and to the harm to be suffered from its denial." Restatement (Second) of Contracts § 366 (1981).

For somewhat similar reasons, the courts of other States, when confronted with pet disputes in the divorce context, have traditionally resisted ordering shared custody of or visitation with jointly owned pets and instead have treated pets as personal property that must be awarded to one spouse or another. See 2 B.R. Turner, Equitable Distribution of Property § 6:109 (4th ed. 2024), and cases cited. See also Annot., Divorce and Separation: Custody Disputes Concerning Pets, 104 A.L.R. 6th 181 (2015). "Determinations as to [pet] custody and visitation lead to continuing enforcement and supervision problems . . . . Our courts are overwhelmed with the supervision of custody, visitation, and support matters related to the protection of our children. We cannot undertake the same responsibility as to animals." Bennett v. Bennett, 655 So. 2d 109, 110-111 (Fla. Dist. Ct. App. 1995). "The extension of an award of possession of a dog to include visitation or joint custody -- components of child custody designed to keep both parents firmly involved in the child's life -- would only serve as an invitation for endless post-divorce litigation, keeping the parties needlessly tied to one another and to the court." Travis v. Murray, 42 Misc. 3d 447, 460 (N.Y. Sup. Ct. 2013).[9]

---

[9] The Travis court adopted a "best for all concerned" standard for deciding which divorcing spouse should be awarded ownership of the parties' pet. Travis, 42 Misc. 3d at 460. The

In this case, however, the judge was asked not to determine whether the parties should share possession of Teddy Bear, but merely to enforce, on a preliminary basis, the parties' own pre-existing agreement for shared possession.  Although the potential for acrimony and disputes over minor details of shared possession remains, the most difficult decision, according to the plaintiff's as yet unrebutted evidence, had already been made by the parties themselves and carried out over a period of some months.  We cannot say that the judge abused her discretion in ordering specific performance here.  But it is within the judge's discretion to revisit that decision if further proceedings or the parties' actions suggest that the burdens of such enforcement on the court are disproportionate to the benefits.  See Lawless v. Melone, 350 Mass. 440, 443 (1966) (specific performance of joint venture should not be ordered where history of litigation presaged unsatisfactory and unworkable arrangement); Westinghouse Broadcasting Co. v. New England Patriots Football Club, Inc., 10 Mass. App. Ct. 70, 74-

Travis case has been characterized as reflecting "a degree of movement away from the traditional position that pets are no different from other forms of property."  2 B.R. Turner, Equitable Distribution of Property § 6:109 (4th ed. 2024).  Under a statute taking effect in 2021, New York matrimonial courts, "in awarding the possession of a companion animal," were required to "consider the best interest of such animal."  N.Y. Dom. Rel. Law § 236(B)(5)(d)(15).  See L.B. v. C.C.B., 77 Misc. 3d 429, 435-436 (N.Y. Sup. Ct. 2022).

75 (1980) (agreeing with judge's "reluctance to order the plaintiff and defendant into an uneasy harness" [quotation omitted]).

Specific performance in these circumstances is a matter of discretion. Where specific performance is unwarranted or infeasible, other remedies remain, including a damages remedy (albeit not fully adequate) for breach of the agreement, and even an equitable remedy in the nature of partition to free the parties of the burdens of continued joint ownership. See G. L. c. 214, § 3(3) (granting Supreme Judicial and Superior Courts jurisdiction of "[a]ctions between joint owners of personal property . . . to order a division or sale thereof and make and order a proper distribution of the proceeds"). See also Tucci, 358 Mass. at 497 (partition proceeding available if tenants in common could not agree on use of property).

Conclusion. The order of the single justice vacating the preliminary injunction is reversed, and a new order shall enter denying the defendant's petition for relief from the preliminary injunction.[10]

So ordered.

---

[10] The defendant's request for costs and attorney's fees is denied.